SUMPTER *v.* ARKANSAS NATIONAL BANK.

Opinion delivered April 13, 1901.

1. FRAUDULENT CONVEYANCE—APPARENT OWNERSHIP.—In 1873 N. furnished to W., her brother-in-law, $400 with which to purchase a lot in the government reservation at Hot Springs, and he thereafter, remained in possession for 23 years, claiming it as his own, collecting rents from it, and making valuable improvements. In 1878 he claimed the right to purchase the lot under act of congress of March 3, 1877, and it was awarded to him by the Hot Springs commissioners in 1879. *Held,* that W. was the owner of the land, and that a conveyance of it by him to N.'s husband for her benefit, in fraud of W.'s creditors, will be set aside. (Page 232.)

2. ESTOPPEL—CONSIDERATION.—S. occupied land within the government reservation at Hot Springs as tenant of G. prior to S.'s death in 1861. In 1865 S.'s wife and two sons, J. and W., improved the property, and in a contest with G. before the United States court of claims for the right to purchase the property from the government S.'s heirs abandoned all claims by virtue of their ancestor's possession, in order to avoid the claim of G. as having been S.'s landlord, and by reason of improvements made by them since 1865 S.'s wife and J. and W. were awarded the right to purchase and did purchase the land in 1877, and remained in possession until 1896, and collected the rents, and sold and mortgaged part of the land. *Held* (1) that the other heirs of S. were estopped from claiming any equities by virtue of the possession of S.; (2) that an agreement of J. and W. to secure the interest of the other heirs of S. in consideration that they be allowed to purchase the land from the government in their names was a *nudum pactum,* as S. never had any interest in the land; (3) that a conveyance by J. and W. to the other heirs of S. after the insolvency of J. and W. was fraudulent as to the creditors of J. and W. (Page 233.)

Appeal from Garland Chancery Court.

LELAND LEATHERMAN, Chancellor.

Action by Arkansas National Bank and others against John J. and William Sumpter and others. From a judgment in favor of plaintiffs, defendants appeal.

*E. W. Rector, J. M. Moore* and *W. B. Smith,* for appellants.

The patentees were trustees for appellants. 2 Pom. Eq. §§ 981, 1031, 1040. Resulting trusts are provable by parol. Sand.

& H. Dig., § 348; 9 Ark. 518; 40 *ib.* 624; 20 Ark. 373. There was no fraud in the transaction, and appellants are not estopped to set up their claim. 109 Mass. 54; 12 Allen, 401; 63 Ark. 169; 1 Johns. Ch. 344; 86 N. Y. 221; 14 Cal. 355; 97 Cal. 72; 70 N. W. 115; *id.* 432; 24 Atl. 928; 13 Pet. 107; 18 Wall. 255, 271; 93 U. S. 326, 335; 106 U. S. 447; 105 U. S. 100; 11 Ark. 263, 266; 24 Ark. 400; 49 Ark. 63; 35 Ark. 365; 53 Ark. 197, 200; 54 Ark. 499, 508; 59 Ark. 614.

*Wood & Henderson,* for appellees.

The conveyances by John J. and William Sumpter were fraudulent and void as to creditors. 8 Ark. 470; 23 Ark. 494; 38 Ark. 419; 50 Ark. 42; 52 Ark. 493; 55 Ark. 59; *id.* 116; 56 Ark. 253; 62 Ark. 26; 73 Fed. 327; 21 S. W. 847; 31 Ark. 666; 6 Wall. 78; 44 Ark. 310; 46 Ark. 127; 41 Ark. 186; 23 Miss. 75; 9 Sm. & M. 394; 8 N. H. 288; 14 N. H. 61; 6 N. H. 67. The evidence to establish a resulting trust must be full, clear and convincing. 48 Ark. 169; 44 Ark. 365; 45 Ark. 481; 11 Ark. 89. If appellants ever had any rights or equities as the heirs of James Sumpter, they are now estopped from setting them up against appellee. 12 Am. Rep. 124; 46 Miss. 349; 25 Conn. 128; 50 N. Y. 575, 578; 69 N. Y. 113; 17 So. 654; 42 N. E. 223; 17 N. E. 612; 50 Ark. 42; 58 Ark. 27; 62 Ark. 32; 49 Ark. 134; 33 Ark. 458; 66 Ark. 98; 11 Am. & Eng. Enc. Law (2d Ed.), 431; 108 Ind. 419; S. C. 9 N. E. 392; 109 Ind. 457; S. C. 9 N. E. 585; 110 Ind. 552; S. C. 11 N. E. 453; 101 U. S. 572; 92 Pa. St. 390; 82 N. Y. 327; 31 N. Y. 510.

BATTLE, J. This suit was brought by the creditors of John J. and William Sumpter against John J. Sumpter and others to set aside certain conveyances of real estate in the city of Hot Springs, in this state, which before then had been made by John J. and William Sumpter to their mother and sisters and to the wife of John J. Sumpter. They alleged in their complaint that the defendants John J. and William Sumpter were indebted to them and other persons, and that at the time of the creation and making of said indebtedness they were the owners, as tenants in common with Elizabeth Sumpter, of certain lands in the city of Hot Springs, including the said real estate; and that, for the purpose of hindering, delaying and defrauding their creditors, they made certain

deeds, by which they undertook to convey to Mary E. Sumpter, Sallie E. Gordon and Ella Little the said real estate; that William Sumpter and John J. Sumpter, with like intent, undertook to convey to the defendant, Nannie E. Sumpter, the wife of John J. Sumpter, lot 9, in block 87, a part of said real estate; that plaintiffs had brought actions in the Garland circuit court on their claims, and had caused orders of attachment to be issued and levied on said real estate, by which they claimed liens on the interest of John J. and William Sumpter therein; and that John J. and William Sumpter were insolvent. And plaintiffs asked that the conveyances of said real estate be set aside, that they be decreed to have liens on two-thirds of said real estate, and that the same be sold to satisfy the liens.

The defendants, Mary E. Sumpter, Ella Little and Sallie E. Gordon, separately answered, and denied the allegations in the complaint, and alleged that the deeds severally executed to them were not voluntary, "that is, in the sense they were without consideration, but that they were made for these reasons and under these circumstances: That James Sumpter, who died in 1861, the husband of defendant Elizabeth Sumpter and the father of defendants John J. and William Sumpter, Mary E. Sumpter, A. E. Little and Sallie E. Gordon, in 1844 obtained possession of a tract of land on the Hot Springs Reservation in the city of Hot Springs and state of Arkansas embracing besides other lands all of the lots mentioned in said complaint; that the said James Sumpter died in possession of the said tract, and left defendants in possession of it; that said tract was a portion of the four sections of land reserved from sale by an act of Congress of the United States in 1832, and is now a part of the city of Hot Springs; that the government of the United States was the owner of said tract, as well as the balance of said Reservation, and never parted with title thereto until the year 1880; that in 1864, during the war, said defendants were constrained to temoprarily leave said tract, but returned in 1865, after the war, and rebuilt their houses and improvements on said tract, the burning of which had necessitated the family's departure from it; that in 1877 William H. and Maria Gaines, under an act of Congress passed in that year, entitled 'An act in relation to the Hot Springs Reservation in Arkansas,' filed before the Hot Springs Commission, appointed under the provisions of said act, a claim of right to purchase said tract on the theory that James Sumpter had occupied it as their tenant,

and thereby sought to deprive said defendants of the benefits of their occupancy of or their improvements upon it; that, on consultation among themselves, and after advice of their attorneys, said defendants agreed that their claim of right to purchase said tract by reason of their occupancy of and improvements on it should be filed before said commission and prosecuted in the name of the defendants Elizabeth, John J. and William Sumpter, for the equal benefit of all of said defendants; that under said agreement all of said defendants Elizabeth Sumpter, John J. Sumpter, William Sumpter, Mary E. (Daniels) Sumpter, A. E. Little and Sallie E. Gordon should share equally in said tract, or such part of it as they might acquire title to under said proceeding, and conveyances were to be made in accordance with this agreement by said defendants Elizabeth, John J. and William Sumpter after title should be acquired; that under said proceedings the defendants Elizabeth, John J. and William Sumpter for their benefit, as well as for said Mary E. Sumpter, Ella Little and Sallie Gordon, acquired title to said lots and to other parts of said tract, and obtained a patent therefor; that the price paid to the United States for said lots was the money of all of said defendants, and that, while title and the patent were obtained in the names of the said Elizabeth, John J. and William Sumpter, as grantees, they took title upon the foregoing terms, and in trust that said deeds were executed to said defendants Mary, Ella and Sallie to sever their interest in said land and to complete the execution of said agreement."

They made their answers cross-complaints.

Nannie E. Sumpter answered, and denied the allegations of the complaint, so far as they affected her, and alleged: "That before the passage of the act for the settlement of the land titles at Hot Springs in March, 1877, George Belding owned and occupied a store house located on that part of said Reservation now known and designated as 'lot 9, block 87;' that said Belding was adjudged a bankrupt by the district court of the United States for the Eastern district of Arkansas, and said lot was sold by his assignee in bankruptcy to one William Sumpter, her brother-in-law; that said purchase was made with her money, and for her, but a deed was taken in the name of the said William Sumpter; and that said William Sumpter presented and filed a claim before the Hot Springs Commission in his name and right to purchase said lot; that it was understood at the time that the title to said lot, if acquired, should be conveyed to her; that the right to purchase said lot was awarded

by said commission to the said William Sumpter, but that he held it in trust for her, as was agreed and understood; that said William Sumpter on the 6th day of May, 1890, conveyed said lot to her husband, John J. Sumpter, for the expressed consideration of $4,000, but that the real consideration was the execution of said trust, and by error said deed was made to her husband, John J. Sumpter, instead of herself; that to cure this error the defendant, John J. Sumpter, on the 20th day of September, 1892, conveyed said lot to defendant Orlando H. Sumpter, who on the same day conveyed it to her, and delivered to her the deed to it; and that no money was paid or agreed to be paid in consideration of either of the last mentioned deeds."    She made her answer a cross-plaintiffs.

The plaintiffs in the action filed answers to the cross-complaints, denying the equitable interests or ownership of the sisters of John J. and Wm. Sumpter, and the wife of John J., and in addition set up as an estoppel against them that they permitted John J. and Wm. Sumpter to procure title to said property in their own names, and to hold themselves out to the public as absolute owners, from the award of the commissioners, in 1878, until the alleged fraudulent conveyances were placed of record in 1896, on the strength of which ownership the said John J. and Wm. Sumpter had obtained credit and incurred the indebtedness with plaintiffs.

Upon the hearing of the evidence adduced, the chancery court found that John J. and William Sumpter were indebted to plaintiffs in divers sums of money; that they conveyed the lands in controversy to their co-defendants; that they were insolvent at the time the conveyances were made; that the conveyances were made for the purpose of defrauding creditors; and set the same aside, and ordered that the interest of John J. and William Sumpter in the lands be sold to pay the plaintiffs; and the defendants appealed.

The facts in the case, as we find them, are, substantially, as follows: In 1832 four sections of land, embracing the Hot Springs in this state, were, by an act of Congress, reserved from sale; the land in controversy being a part of the reservation. At the time this reservation was made, the quarter of a section on which the hot springs are located was claimed by Henry M. Rector under a New Madrid location, and by John C. Hale and William H. Gaines under alleged pre-emption rights. After the land was reserved, litigation ensued between Rector, Hale and Gaines in the state

courts, but the United States was not a party. This continued until 1870, when Congress passed an act authorizing all persons who claimed any portion of the reservation to institute suit in the court of claims at Washington. Rector, Hale and Gaines then abandoned their suits in the state courts, and filed their respective petitions in the court of claims, claiming title to the land. On the 24th of April, 1876, the supreme court of the United States, on appeal of the cases from the court of claims, decided that the land belonged to the United States, and that none of the claimants had any title to it. The court of claims, after the final decision of the supreme court, appointed a receiver, who took possession of the lands reserved, in behalf of the United States, and rented out the buildings and improvements on the reservation. Thus matters remained until the year 1877, when Congress passed an act providing for the appointment of a commission, and authorized it to inquire into and determine the rights of purchase, under the act, of all claimants and occupants on the reservation to the lands they claimed and occupied. The section of the act which so authorized the commission is as follows:

"That it shall be the duty of said commissioners to show by metes and bounds, on the map herein provided for, the parcels or tracts of land claimed by reason of improvements made thereon or occupied by each and every such claimant and occupant on said reservation; to hear any and all proof offered by such claimants and occupants and the United States in respect to said lands and in respect to the improvements thereon, and to finally determine the right of each claimant or occupant to purchase the same, or any portion thereof, at the appraised value which shall be fixed by said commissioners.

"Provided, however, that such claimant and occupants shall file their claims, under the provisions of this act, before said commissioners within six calendar months after the first sitting of the said board of commissioners, or their claims shall be forever barred.

"And no claim shall be considered which has accrued since the 24th day of April, 1876." 19 Stat. 378.

The facts we have related constitute a part of the history of the entire reservation. The facts which relate solely to the land in controversy, so far as it is necessary to state them in this opinion, are as follows: It (the land in controversy) was a part of the land claimed by Gaines in his litigation with Hale and Rector and

the United States, and was occupied by James Sumpter, the husband of Elizabeth Sumpter, and the father of John J. Sumpter, William Sumpter, Mary E. Sumpter (Mrs. Daniels), Ella Little, Sallie E. Gordon, and Loretta E. Tombler, as a tenant of Gaines, until he died in 1861. After his death his widow and daughters continued in possession of the land until in August, 1864, when all the improvements on it were destroyed by fire. At that time John J. and William Sumpter were in the Confederate army, and after the destruction of the improvements William returned to Hot Springs, and he, Elizabeth and her daughters, the said Mary E., Ella Little, Sallie E., and Loretta E., moved away from Hot Springs, and located in Arkadelphia, in this state, and there resided until October or November, 1865, when they returned to Hot Springs, and took possession of the land. When they returned, the land was wholly unoccupied and destitute of improvements. Elizabeth and William erected houses on the land, which they and the daughters occupied. In 1866 John J. returned to Hot Springs, and entered into possession of the land with his mother, Elizabeth, and brother, William, and thereafter they made many valuable improvements on the land. In fact, all the improvements made after October, 1865, and before April 24, 1876, were made by Elizabeth, John J., and William Sumpter; and they held possession, controlled and managed the property as their own, collecting and appropriating to themselves the rents from the time they took possession in 1865 until the commissioners appointed under the act of March 3, 1877, came to Hot Springs.

When the commissioners arrived at Hot Springs, and entered upon the discharge of their duties, William H. Gaines presented a petition to them, asking that he be allowed to purchase the land in controversy, claiming it on the ground that James Sumpter held it as his tenant, and that the possession of his widow and children was a continuation of his possession and held in the same right. Elizabeth, John J., and William Sumpter also presented a petition claiming the right to purchase the property in their own right, by virtue of their taking, occupying, and improving it after October, 1865, and asking that they be allowed to purchase according to the act of Congress of March 3, 1877. They alleged in their petition that the improvements made on the land by James Sumpter were wholly destroyed by fire, and his possession was afterwards abandoned; that James Sumpter died in the year 1861; that in the year 1865, after the destruction of

all his improvements, and after every member of his family had left the land, they returned to and took possession of it, and began and thereafter made valuable improvements thereon, and that they remained in possession, using it as their own ever since, until the United States took possession.   They adduced evidence before the commissioners in support of their petition, from which the commissioners found that their claim accrued prior to the 24th day of April, 1876, by reason of the use, occupation and improvement of a portion of the premises described in their petition, and that the petitioners were the owners and entitled to the possession of the improvements made thereon, and awarded to them the right to purchase the land.

At the time John J. and William Sumpter presented their petition to the commissioners, and the award to them was made, their sisters, Mary E., Sallie E., Loretta E. and Ella Little, defendants in this action, claimed an interest in the land as heirs of James Sumpter, their father.   But it was known that James Sumpter, at and sometime before his death, held the land as a tenant of William H. Gaines.   To avoid the effect of the lease of Gaines under which their father held, the widow and children of James Sumpter agreed that the petition to purchase should be presented to the commissioners by and in the names of Elizabeth, John J. and William Sumpter, and that the claim of the right to purchase should be based upon the improvements made by the petitioners after their return to the possession of the land in 1865, and no reliance should be placed upon the previous occupancy and improvements of James Sumpter; and it was understood that Elizabeth, John J., William, Mary E., Sallie E., Loretta E., and Ella Little should each have an equal interest in any award that was made.   Under this agreement and for the purpose stated, the petition was presented and prosecuted; and ·in this manner, it appears, the claim of Gaines was defeated.

After the award, which was rendered in 1879, Elizabeth, John J., and William Sumpter occupied and used the land, and exercised acts of absolute and exclusive ownership over it.   They rented various portions of the land for long and short terms— a part of it for terms of five and ten years—and collected large sums for rent, receiving from one tenant more than $23,000, and sold valuable portions of it, and received for two parcels as much as $24,000; and John J. and William mortgaged a portion of

it to secure the payment of two loans of money, amounting in the aggregate to $12,000.  They collected and appropriated to their own use the moneys collected for rents and purchase, and never accounted in any way to the sisters for the same.  The deeds and leases were executed by them, and no other persons joined.  They continued to use and dispose of the property until October, 1895, a period of fifteen years or longer, when John and William became deeply involved in debt and insolvent, and conveyed their respective interest in the property to their mother and sisters, their co-defendants in this action.  Many of the debts, especially those owing to the plaintiffs in this action, were contracted on the faith of their ownership of the property, and after making inquiries about the same and an examination of the records of the county of Garland, in which the land lies.

The defendant, Nannie E. Sumpter, wife of John J., claims lot 9, in block 87, in controversy in this action.  She and William testified that her husband, as assignee in bankruptcy of the estate of George Belding, was authorized to sell the lot; that they agreed that William should purchase it for her and have it conveyed to himself; that she furnished him $400 for that purpose; and that he purchased and paid for it with her money, and took the deed for it in his own name.  This transaction occurred in 1873.  William conveyed the lot to John J. by a deed dated May 6, 1890, but executed after the 22d of August, 1892, and recorded on the 25th of May, 1896.  John J. and his wife, Nannie E., conveyed to their son, Orlando H. Sumpter, and he conveyed to his mother, by deeds dated September 20, 1892, and filed for record on the 26th of May, 1896.

When he purchased, William took possession of the lot at once, and held it continuously up to 1896, a period of about twenty-three years.  He held it, and claimed it as his own.  Soon after his purchase he expended at one time $700, and at another $113, in making improvements.  The money so spent was his own, and John J. acted for him in making the contract for the improvements.  The lot being a part of the Hot Springs Reservation, he presented a petition to the commissioners in 1878, claiming the right to purchase under the act of Congress of March 3, 1877, and it was awarded to him by the commisisoners in 1879. He and John J. testified before the commissioners, in support of the petition, that he owned the improvements on the lot by virtue

of his purchase from John J. as assignee, and the other improvements made by him after the purchase.    After the award he still held and used the property as his own.    It rented well, being used as a saloon until 1896.    A portion of the time he carried on a saloon business on it in his own name and for himself, but it was occupied the most of the time by tenants to whom he rented, and from whom he always collected the rents in person, or through the Arkansas National Bank acting for him. A portion of the time it rented for $150, and from that down to $100 per month.    Mrs. Nannie E. never in the whole period of twenty-three years received any of the rent or asked for it.    From these and other facts too numerous to state in this opinion, we find that William was the owner of the lot until 1896, and that he conveyed it in that year, by a deed antedated, to John J., at a time when he was insolvent, for the purpose of hindering, delaying or defrauding his creditors in the collection of their claims against him, and that the deeds for the same property subsequently or at the same time made by John J. and Orlando H. were of the same fraudulent character.

The conveyances made by John J. and William Sumpter to their sisters are clearly fraudulent and void as to their creditors, as well as the deeds made by William, John J. and Orlando H. to lot 9, in block 87.    Mary E. Sumpter (Mrs. Daniels), Ella Little, and Loretta E. Tombler, who succeeded to the rights of Sallie E. Gordon, she having died, abandoned in this court all claims under the conveyances executed to them by John J. and William Sumpter, and base their case solely on their rights and equities as the heirs of James Sumpter, deceased, if they had any.

James Sumpter held the land as a tenant of William H. Gaines.    By reason of this relation he was estopped from disputing the title of Gaines while he retained possession.    *Rector* v. *Gibbon,* 111 U. S. 276; *Lawrence* v. *Rector,* 137 U. S. 139; *Goode* v. *Gaines,* 145 U. S. 141.    It is apparent that his heirs acquired no greater rights than he had.    They seem to have been aware of this fact when they consented that the petition to purchase under the act of March 3, 1877, should be made in the names of Elizabeth, John J. and William Sumpter.    Having inherited from their father nothing more than he had, it follows that their claim to rights and equities in the land as heirs of James Sumpter is without foundation.    It follows, too, that their agreement as to

the petition and award was without consideration, and was a *nudum pactum.* Being without consideration, the land acquired by the award, so long as it remains in force, was the absolute property of Elizabeth, John J. and William Sumpter; and the conveyance of it by John J. and William Sumpter to their sisters, without consideration, when they were insolvent, and under the circumstances shown by the evidence, was certainly a fraud upon creditors and void.

Mary E., Ella, Sallie E. and Loretta E. permitted Elizabeth, John J. and William Sumpter to acquire the land in controversy ostensibly as their own. For about fifteen years or longer they knowingly permitted their mother and brothers to use it and dispose of it as their own; to rent it and collect from the tenants large sums of money, and to use the same without accounting; to sell and convey valuable portions of it, receiving for two tracts as much as $24,000; and to mortgage the same to secure large sums of money that they were owing. Their failure to assert any right to the land under these circumstances was calculated to, and doubtless did, lead creditors to believe that they had no interest, and to extend to John J. and William credit on such faith. They had, if they had any interest in the land, assisted in clothing Elizabeth, John J. and William with all the legal *indicia* of ownership by permitting and encouraging them to secure the award of the right to purchase the property, and by removing, so far as they could, all obstacles in the way to their so doing, and by that and subsequent conduct, in effect, denied that they had any interest in the property, and by their supineness increased the credit of John J. and William Sumpter. They should have known, if they had any interest, that their conduct would increase the credit of their brothers; and they were guilty of gross carelessness in failing for so long a period of time to assert their interest, if they had any, and are now estopped by their conduct from so doing in this action. *Bramble* v. *Kingsbury,* 39 Ark. 134; *Bunch* v. *Schaer,* 66 Ark. 104; *Geo. Taylor Com. Co.* v. *Bell,* 62 Ark. 26; *Driggs & Co.'s Bank* v. *Norwood,* 50 Ark. 46; *Brant* v. *Virginia Coal & Iron Co.* 93 U. S. 326, 335.

Decree affirmed.