Minnich *et al. v.* Shaffer *et al.*

No. 16,316.

MINNICH ET AL. *v.* SHAFFER ET AL.

REAL ESTATE.—*Conveyance.*—*Deed in Husband's Name.*—*Part Consideration by Wife.*—*Credit Given Husband on Faith of His Ownership.*—*Wife Estopped.*—Where a husband purchases land, taking the deed in his own name, the wife furnishing part of the purchase money with knowledge of the fact that the deed was made to the husband, and suffered the deed to remain on the public records for nearly two years, and allowed him to receive credit on the faith of his ownership of the land, she can assert no title to the land against those who had no notice or knowledge of any such claim or interest on her part, and who have acquired an interest in the land on the faith of the husband's ownership.

JUDGMENT.—*Contrary to Law.*—*Not Sustained by Evidence.*—That the decision of the court is not sustained by the evidence and is contrary to law, see opinion.

From the Huntington Circuit Court.

*J. M. Hatfield*, for appellants.
*C. W. Watkins*, for appellees.

HOWARD, J.—From the first paragraph of the amended complaint, filed by appellees, it appears that, on the 19th day of February, 1890, Isabella Jackson, named as defendant in the caption of the complaint, but referred to as plaintiff in the body of the pleading, was the equitable owner of a certain lot in the city of Huntington, described in the complaint, but that the legal title to said land was in her husband, Jeremiah J. Jackson, also named as defendant in the caption, but treated as plaintiff in the body of the complaint; that, on the same day, the appellants obtained a judgment against the said Jeremiah J. Jackson for $208, and caused a transcript of the same to be filed at once in the office of the clerk of the Huntington Circuit Court; that, afterwards, the Jacksons conveyed said land by warranty deed to appellees,

Shaffer and Shaffer. There is also an averment that Jeremiah J. Jackson had no interest in said real estate, but held the same in trust for his wife, Isabella. Prayer to quiet title in Shaffer and Shaffer, and that the sheriff, James M. Bratton, who is made defendant, be enjoined from selling the land on the judgment in favor of appellants.

The second paragraph of the complaint is substantially the same as the first, with the additional averment that, at the time of the conveyance of the land by Jacksons to Shaffers, Jeremiah J. Jackson did not have six hundred dollars' worth of property, and that he was entitled to an exemption for that amount.

Appellants' motion to strike out this complaint for irregularities apparent on its face, and also their demurrer to the complaint, were overruled.

Appellants answered—

First. By a general denial.

Second. That Jeremiah J. Jackson had himself purchased said land on the 29th day of May, 1888, paying six hundred dollars in cash and assuming incumbrances to the amount of eight hundred and twenty-five dollars; that he took the deed in his own name, and, on the same day, had the deed duly recorded; that he took possession of the land and continued to hold the legal title until the 24th day of February, 1890, when the real estate was conveyed to the appellees; that Isabella Jackson knew that the title was taken in her husband's name, and that she never made any claim to the lot; that credit was extended to Jeremiah J. Jackson by appellants, and their judgment debt incurred by reason of his ownership of said land; and appellants had no notice or knowledge of the claim of Isabella until long after such credit was given; that appellees took said conveyance on the 24th day of February, 1890, well knowing that appellants had

obtained their said judgment on the 19th of February, 1890.

In the third paragraph of the answer, it is further alleged that in the conveyance by the Jacksons to Shaffers, the appellees, it was part of the consideration that Shaffers should pay appellants' judgment, and also alleged that Shaffers retained, for a time, a sufficient amount of the purchase price to pay said judgment, of which amount they still retain $175.

The fourth paragraph of the answer avers that said real estate was sold to the appellees as the property of Jeremiah J. Jackson, he warranting the title thereto, and both he and his wife representing that he was the owner. It is also averred that at the date of the sale, and for a long time afterwards, Jeremiah J. Jackson was the owner of personal property, in the city of Huntington, of the value of fifteen hundred dollars, and that he did not at any time ask to have said real estate exempt from sale on execution.

The fifth paragraph merely states that the Shaffers have since sold the land in controversy, and have no longer any interest in it.

The appellees replied in general denial.

There was a finding by the court in favor of the appellees Shaffer and Shaffer, and a judgment and decree quieting their title to the real estate described in their complaint, and enjoining the collection of appellants' judgment against said land, and restraining them from setting up or asserting any right, title or interest in the same by reason of said judgment.

A motion for a new trial as of right, and also a motion for a new trial for the reasons therein stated, were overruled.

Appellants complain of the rulings of the court on the pleadings. We are of opinion, however, that whatever

error, if any, there may be in these rulings, has not caused any material harm to appellants. The alleged errors are technical, and will be considered cured on the appeal.

Whether the motion for a new trial as of right should have been sustained, we need not inquire; for we are satisfied that appellants were entitled to a new trial for the reasons given in their motion, namely, that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law.

The evidence is properly in the record by bills of exceptions, and the evidence given by the appellees alone is of such a character that, had it been submitted to a jury, it would have been the duty of the court to direct the jury to return a verdict for the appellants.

At the time the Jacksons purchased the land in controversy, it appears, from the evidence, that a part of the purchase money was furnished by Mrs. Jackson, but that the deed was taken in the name of her husband. This was apparently with the wife's consent. She testified that she "did not know whose name it was in."

For nearly two years, she suffered the deed to remain on the public records in her husband's name and allowed him to receive credit on the faith of his ownership of the land. Appellants had no notice or knowledge of her claim, but relied fully upon his title, as shown upon the records.

Isabella Jackson might, perhaps, have asserted her title against those having knowledge of her alleged interest, or against persons who might claim as heirs or devisees of her husband in case of his death; but she could assert no such title against those who, as appellants, had no notice or knowledge of any such claim or interest on her part, and who had a right to rely upon the public records, and upon her acquiescence for so long

a time in the title of her husband.  *Michener* v. *Bengel*, 135 Ind. 180, and authorities there cited.

It was admitted on the trial that appellants, judgment against Jeremiah J. Jackson was obtained, and a transcript thereof filed in the office of the clerk of the circuit court of Huntington county, before the date of the conveyance made by Jacksons to appellees.

Jeremiah J. Jackson testified that, at the time of the conveyance to appellees, he had filed a schedule. This schedule was for about four hundred dollars, but did not include an additional amount of about four hundred dollars' worth of goods in a store then owned by him, nor did it include the land in controversy. This land was sold to appellees for sixteen hundred dollars.

Rudolph O. Shaffer, one of the appellees, testified that, of the purchase price of the land, they paid about $752 to satisfy debts which appear to have been incumbrances upon the land, thus leaving a balance of nearly $850. Of this balance they applied $155 on account due themselves, paid Mrs. Jackson $404, seemingly the equivalent of what was claimed as invested by her in the land, and still retain $175, leaving a further amount unaccounted for of about $114.

He further testified that the balance was "held back on account of judgment of Minnich and Strouse," the appellants.  "We were to pay $1,600 for the property. *   *   *   We held back that amount to cover that claim [appellant's judgment] if it had to be paid, and also for the taxes."

From the evidence of the appellees, therefore, and there is no other evidence on the subject, it appears that, at the date of the sale of the real estate to appellees, February 24, 1890, Jeremiah J. Jackson owned property to the value, apart from liens other than appellant's judgment, of over $1,700.

Minnich *et al. v.* Shaffer *et al.*

As Jeremiah J. Jackson was a householder, if he had less than $600 worth of property at that date, it may be conceded that appellants' judgment would not be a lien on any of his property; but as he then owned over the amount allowed for exemption, it is clear that the judgment was a lien on the real estate in controversy at the time it was sold.

Indeed, the parties to the sale seem to have been of that view themselves when the sale was made. Both the Jacksons say that the land sold for $1,600, and that $175 of said sum was retained by appellees, the purchasers. The appellee Rudolph O. Shaffer gives the same testimony, and, in addition, in accounting for the proceeds of sale, shows that not only $175 was retained, but fails to account for a further balance of about $114. And he states expressly, "That left a balance of the claim of Minnich and Strouse," and, further, that "We held back that amount to cover that claim if it had to be paid." On the evidence of the appellees, the finding should have been for the appellants.

The judgment is reversed, with instructions to grant a new trial.

DAILEY J., took no part in the decision of this case.

Filed Oct. 13, 1893; petition for a rehearing overruled Dec. 16, 1893.