GEORGE TAYLOR COMMISSION COMPANY *v*. BELL.

Opinion delivered February 8, 1896.

EVIDENCE—DECLARATIONS OF VENDOR.—Where, in a proceeding by a creditor to enforce a debt out of land of a husband, the latter's wife intervenes, claiming under deed from the husband, the husband's declarations as to his ownership of the land, made before his conveyance to her, are inadmissible; but such as were made thereafter, and while he was in possession of the land, are admissible.

HUSBAND AND WIFE—CONVEYANCES BETWEEN.—A conveyance of land by a husband to his wife is valid in equity, but may be avoided by the husband's creditors for fraud.

WITNESSES—HUSBAND AND WIFE.—A husband may testify for his wife as to any business transacted by him for her as her agent, but cannot testify against her.

HUSBAND AND WIFE—ESTOPPEL.—A wife who permits her husband to invest her money in land in his own name, and obtain credit upon the strength of his apparent ownership thereof, cannot afterwards assert her claim to the money or its proceeds as against the husband's creditors.

Appeal from Clark Circuit Court.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

On March 2, 1893, appellant brought suit against W. J. Bell in the Clark circuit court for $10,603.43, and sued out an attachment on said day, which was levied upon the land claimed by interpleader, Alice Bell. At the August term of the Clark circuit court, Alice Bell interpleaded for the land in controversy, claiming the same by virtue of a deed dated April 14, 1887, from W. J. Bell (who is her husband). Appellant recovered judgment against W. J. Bell for the sum sued for, and the attachment was sustained. Appellant answered the interplea, denying interpleader's title to the land, and alleging that in the year 1887, and for a long time before,

W. J. Bell was largely indebted to the plaintiff and other persons, beyond his ability to pay ; and that the debt he then owed plaintiff had never been paid, except by contracting other and larger debts, which were still unpaid ; and that the identical debt for which the attachment in this case was sued out was made upon the faith of W. J. Bell's representations that he was the owner of the lands in controversy; and that on the 14th day of April, 1887, he secretly, and for the purpose of defrauding plaintiff, without consideration, pretended to convey said land to the interpleader, who is his wife, and that said pretended deed was void. This answer concluded with a motion to transfer to chancery.

It appears, from the evidence in this case, that the appellee, Alice Bell, was married to W. J. Bell in 1872; that after their marriage she received some money from her father's estate, with which some land was bought in Nevada county, the title to which was taken in the name of W. J. Bell, her husband, the deed for which bore date 20th of April, 1877. Bell subsequently conveyed the same land to Alice Bell, his wife. Bell and wife swapped this land to Bonner for land in Clark county. The deed to Bonner bore date August 10, 1880. The deed for the land obtained from Bonner was also made to W. J. Bell. Mrs. Bell states that the reason she conveyed the land to her husband was that Bonner wanted a deed from him. They then sold the land they bought from Bonner to Dave Hamilton, a colored man, for $1600, $600 of which was paid in cash, and was paid to Bonner, to cover difference in agreed value of land they sold Bonner, and that they bought of him. The notes given for the thousand dollars deferred payment for the land sold Hamilton were made payable to Mrs. Bell, and all were paid by the spring of 1882. She states she received four hundred dollars interest on these notes. Mrs. Bell

testified that she would sometimes lend her husband money, and take his note for it.

The deed from W. J. Bell to his wife for the land in controversy bears date of 14th of April, 1887, at which time Bell was merchandising, and largely indebted to appellants. This deed was not recorded until 1891, some three years and nine or ten months after its execution, and in the mean time Bell's indebtedness was growing larger, and continued to increase until he failed. W. J. Bell went into business in December, 1886, before he sold his wife the land in controversy on the 14th of April, 1887. Bell testified that the money his wife paid for the land she bought of him went into his mercantile business, the amount being $800.

The appellant offered to prove by C. C. Henderson that on the 18th of January, 1887, he was in the employ of the plaintiff, and that W. J. Bell represented to him that he was the owner of a black-land farm containing 320 acres; but the court refused to allow this testimony to go to the jury, and the plaintiff excepted. But the witness was allowed to testify that about the 25th of April, 1887, which was after the date of the conveyance by Bell to his wife, and while he was in possession of the land, Bell represented his assets to be the black-land farm, mill, gin and good notes for $500. Other testimony as to Bell's statements that he owned the black-land farm, which were made while Bell was not in possession of the farm, was excluded by the court, to which appellant excepted.

The appellant offered W. J. Bell as a witness, and the court held that he could not testify against the interpleader, who was his wife, and that he could testify as to transactions for her, to which appellant excepted. Appellant offered to prove by Bonner that he had never heard that the land in controversy belonged to Alice Bell, which was excluded, to which appellant excepted.

Hamilton testified that Bell told him that the land he bought from Bell belonged to his wife, and he also testified that the notes he gave for the deferred payments of purchase money were made payable to her. But the court refused to allow the deed from Bell and wife to Hamilton to be read in evidence to the jury, to which the appellant excepted; and the court allowed the appellant to offer oral evidence to show that the deed was an ordinary deed to husband's land, reciting notes for $1,000.

The appellant asked ten instructions, all of which were refused except the tenth, to which exceptions were properly saved. The eighth instruction, refused by the court, is as follows, to wit: "You are further instructed that, if you find from the evidence that Alice Bell permitted her husband to take the money received from her father's estate, and invest it in land in his own name, and to deal with it as his own, and obtain credit upon the strength of his apparent ownership thereof, she cannot now claim the same against her husband's creditors."

The court gave the following instructions, to-wit: "(1.) If the jury believe from the evidence that the real estate in controversy was conveyed by W. J. Bell to Alice Bell, the interpleader, for a valuable consideration, and with no intent to cheat, hinder and delay W. J. Bell's creditors, they should find in favor of the interpleader, Alice Bell. (2.) The jury are instructed that, before they can find for the plaintiff, George Taylor Commission Company, they must find that the deed from W. J. Bell to his wife, Alice Bell, was not executed for a valuable consideration, or that W. J. Bell's intention to cheat, hinder and delay his creditors was known to his wife, and participated in by her, or that she was in the possession of such facts as would put a reasonably prudent person upon inquiry by which the fraud could be discovered. (3.) The burden of proof to establish fraud rests upon the George Taylor Commission Company.

(4.) The jury are instructed that, if they find from the evidence that W. J. Bell gave his wife, Alice Bell, the Hamilton notes for $1,000 when the said Bell was not indebted, then the said Bell's subsequent creditors cannot complain that the said notes were conveyed to her as a gift, unless the gift was made with the intention afterwards to fraudulently contract debts." And the plaintiff objected to the giving of these instructions, but the court overruled the objections, and gave them as asked. Plaintiff excepted.

There was a verdict and judgment for the interpleader. Appellant filed a motion for a new trial, raising every question. It contains eleven grounds. Plaintiff below appealed to this court.

*Tompkins & Greeson* for appellant.

1. A deed from husband to wife is void at law. Our statutes have not removed the disabilities of the wife, so far as to make a deed from her husband to her valid at law. 28 S. W. 796; 43 *id.* 164; 39 *id.* 357; 56 *id.* 294; 49 *id.* 438; 25 N. Y. 333; 105 Ind. 410. The interpleader must recover upon the strength of her title. An equitable title cannot be the foundation of a possessory action. Sand. & H. Dig. sec. 2573; 41 Ark. 465; 54 *id.* 480; Tyler on Ejectment, pp. 74, 78.

2. The court erred in holding that the husband could not testify *against* interpleader, but that he could testify as to transactions *for* her.

3. Credit was extended Bell upon the faith of the ownership of the land in controversy. When a wife permits a husband to take a deed to land purchased with her money in his own name, and deal with it as his own, and obtain credit upon the faith of being the owner, she cannot claim it against his creditors. 50 Ark. 46; Wait, Fr. Conv. sec. 300.

4.  The ninth instruction should have been given. Sand. & H. Dig. sec. 3472; 25 Fed. Rep. 87 and note.

5.  The evidence shows that there were 180 acres of land. The homestead cannot include more than 160. The excess at least is liable.

*J. H. Crawford* for Alice Bell, the interpleader.

1.  The land was the homestead, and no transfer could be in fraud of creditors.  43 Ark. 430, 434; 54 *id*. 193; 52 *id*. 101.

2.  An executed deed from husband to wife is not void at law.  Sand. & H. Dig. sec. 4940, 4945; 9 Neb. 16; 126 Pa. St. 470; 117 Ind. 94; 31 Atl. 165; 80 Me. 472; 62 N. W. 1108; 70 Tex. 108; 51 Ark. 108; 88 Am. Dec. 54.

3.  The husband or wife can only testify *for the other* in regard to any business transacted as agent, *not against*.  Sand. & H. Dig. sec. 2916, subd. 4.

4.  A wife is not estopped by the unauthorized statements of her husband in her absence.  73 Tex. 597; 5 Tex. Civ. App. 557.

5.  The validity of the wife's deed did not depend upon its being recorded.  77 Cal. 218.

HUGHES, J., (after stating the facts).  There was no error in the refusal by the court to admit the evidence of the declarations of W. J. Bell as to his ownership of the land in controversy that were made before he conveyed the land to Alice Bell, his wife.  Such as were made afterwards, while Bell was in possession of the land, were properly admitted by the court.

*Admissibility of declarations of vendor.*

Appellant contends that a conveyance of land by the husband to the wife is void, that he is incapable of making a valid conveyance to her; but in this he is mistaken.  A conveyance of real estate by a husband to the wife is not void, but valid in equity, but may be avoided by creditors of the husband for fraud.

*Validity of conveyance from husband to wife.*

Competency
of husband
and wife as
witnesses.

There was no error in the ruling by the court upon the admissibility of the testimony of W. J. Bell.* The instructions given by the court were correct.

When wife
estopped to
claim property
in husband's
name.

The instruction numbered 8, refused by the court, should have been given, as it announces the law correctly, as laid down in *Driggs & Co.'s Bank* v. *Norwood*, 50 Ark. 46, in which case it is said in the syllabus, which correctly states the principle decided in the case, that "where a husband collected his wife's money and used it as his own, without objection on her part, for a period of more than ten years, and obtained credit on the faith of its being his own, she could not afterwards assert her claim to such money, or its proceeds, against the husband's creditors. Her assent to the husband's use of the money would in such case be presumed, in the absence of proof to the contrary." There is no error in the court's refusal of the other instructions. "A wife who gives her husband unlimited control of her property and money, and permits him to invest it in his own business for a series of years, is not, in case of his insolvency, permitted to shield his property from the just claims of persons who, in good faith, have given the husband credit, in reliance upon his ownership. In such a case a conveyance by the husband to the wife is fraudulent and void as to creditors." *Riley* v. *Vaughan*, 116 Mo. 169; *Bennett* v. *Bennett*, 37 W. Va. 396.

It is true that "a husband in failing circumstances, who owes a debt to his wife, may prefer her as a creditor to the exclusion of others, and a transfer of property to her in good faith for this purpose, without fraud on his part, or, if with such fraud, without participation therein by her, must be upheld." But if she permits her husband to take her money, and invest it in land in his own name, and to deal with it as his own, and obtain

---

*See Sand. & H. Dig. Sec. 2916.—[Rep.]

credit upon the strength of his apparent ownership of it, up to the time of his failure in business, she will not be allowed then to claim it against his creditors, having permitted him to represent it to be his own, and upon the apparent ownership of which he had obtained his credit and standing in business. *Besson* v. *Eveland,* 26 N. J. Eq. 471; *Sexton* v. *Wheaton,* 8 Wheat. 229.

For error in refusing said instruction numbered 8, the judgment is reversed, and the cause is remanded for a new trial, without prejudice to the rights of the appellees to claim their homestead in the lands in controversy.