### PRIORITY OF JUDGMENTS AS DETERMINED BY EQUITABLE RIGHTS.

Common Pleas Court of Franklin County.

MARGARET FLEMING v. JOHN G. McGUFFEY ET AL.

Decided, April 19, 1909.

*Res Judicata—When the Plea May be Urged—Restoration of "Destroyed" Deed—Lis Pendens—Pure Equities—Laches—Estoppel—Title—Priorities—Date of Lien Under a Judgment which was Appealed—Suspension of Judgment by Appeal—Wills—Sections 4134, 5235 and 5236.*

1. The appearance of an administrator as a party to a cause, and his allegation of probable liability against the estate, does not make the judgment thereafter oftained *res judicata* as to creditors of the estate who were not parties to the action and who had at the time another action pending to which the estate was a party defendant, and the plea of *res judicata* can not stand against the

equities of creditors so situated whose action has resulted in a judgment.

2. Where a wife persuades her husband to execute a deed in her favor in payment of a stale loan, and the husband afterward destroys the deed and makes a will by which the same property is passed to his wife, and she actually takes under the will without a formal election, she can not thereafter maintain priority of title to the property so devised to her over judgment creditors of the estate by virtue of a decree which restored the deed her husband destroyed, but which was never "lost."

3. Where a question of priority of judgments appeals to the conscience of the court, equitable rights may be determined by assigning to the judgment embodying the least equity a lien dating from the circuit court decree, rather than that of the common pleas from which an appeal was taken, especially where the party holding the judgment embodied in the decree has been guilty of laches to a degree which should estop the assertion of the claim.

*M. E. Thrailkill,* for plaintiff.

*DeWitt & Hubbard,* for Mary E. Haviland.

*J. J. Stoddart* and *W. K. Williams,* for the Tribune Fresh Air Fund Society.

KINKEAD, J.

The question is presented upon demurrer of the Tribune Fresh Air Fund Society to the amended answer of Mary E. Haviland to the second amended answer and cross-petition of the Tribune Fresh Air Fund Society; and upon the demurrer of Mary E. Haviland to the reply of plaintiff.

The action of plaintiff and cross-petitioners is a creditor's bill against bondsmen of an executor.

A previous action was brought by these judgment creditors against the bondsmen of Ripley C. Hoffman, executor, to which Mary E. Haviland, as administratrix, was defendant. This was determined upon demurrer to the petition in the Supreme Court April 22, 1902. It then proceeded to judgment, the plaintiff and the demurring cross-petitioner in this action obtaining judgments as hereinafter appearing. This action was thereupon instituted December 29, 1904.

Mary E. Haviland commenced an action May 31, 1902, to restore a destroyed deed made to her by her husband in 1882, the

deed being destroyed in 1890 or 1891. A decree was rendered. in her favor in that case. These judgment creditors were not parties to her action. The defendants were the heirs and administrator of Michael Haviland, deceased.

The question upon demurrer is whether Mrs. Haviland's action is *res judicata* and a valid defense so far as the judgment goes to the Michael Haviland estate.

The general doctrine is that to make out the defense of *res judicata*, the subject-matter of the judgment set up must be the same, and it must be between the same parties or their privies, and the precise question must have been determined. *Mauldin* v. *City*, 69 Am. St., 855.

The plea can never be urged against one who is not a party to the litigation, nor against one not represented by another who stands in a relation of privity.

The claim is made here that the matter pleaded operates against the judgment creditors, because they were represented by the administrator of the Michael Haviland estate.

It is true that the administrator of the estate appeared in the case brought by Mary Haviland, and that he alleged that there was a probable liability on the bond as against the estate.

Such a pleading by the administrator amounted to nothing so far as the judgment creditors are concerned. It would have been unusual for the administrator to have even allowed such unliquidated claims as were presented by these judgment creditors as valid claims against the estate. It was no part of his legal duty to represent these unliquidated c'aimants. The pleading presented by the administrator was not in the least binding upon them, because their action was pending against Mary E. Haviland, administratrix of Michael Haviland, deceased, and other bondsmen on the Hoffman bond, at the time, and long prior to the date when Mary E. Haviland brought her action to restore the deed.

The action of these claimants being a pending one, it was notice to the world, and especially to Mary E. Haviland, individually, as devisee, of the claims being thereby asserted, the doctrine of *lis pendens* operating with full force against all the

lands which stood in the name of Michael Haviland, including that devised to her.

It is now the duty of a court of equity to take notice of all the equities existing between these parties. It is a case of pure "equities," and not of *res judicata;* the decree pleaded does not constitute a plea of *res judicata* against the judgment creditors because they are not parties to the action and were not represented therein.

On the contrary, Mary E. Haviland, to whom the legal title of the land in question has been decreed, stands charged with all of the equities arising from the circumstances in this case in favor of the judgment creditors.

The decree in her favor, under all the circumstances, does not entitle her to as much consideration as if the deed itself had actually been produced and recorded, though tardily, and the judgments against her husband's property had merely intervened before she had placed her deed on record.

The question presented by the pleadings, instead of being one of *res judicata,* is merely one of "equities"; the decree in Mary E. Haviland's favor is to be considered much in the same light as if she had placed her deed on record, excepting that under all the circumstances the equities are very much against her, because of her own conduct which estops her as against these judgment creditors. She stood by the Haviland administrationship until the Supreme Court decision fixed the bond liability, and then she took up her individual warfare.

The question is novel, and difficult to bring within any existing statutes or adjudication, but it is not at all difficult to discover the equities existing in favor of the judgment creditors, as against Mrs. Haviland.

It is even doubtful whether the statute, Section 4134, Revised Statutes, governing the registration of conveyances, applies in this case, because Mrs. Haviland's title has not been put upon record by virtue of that statute. In the absence of her compliance with the terms of that statute she resorted to the extraordinary powers of a court of equity, to make up for her failure to do that which the statute required of her, to make her title good, at least against *bona fide* purchasers. So that

now, as between herself and these judgment creditors, there appears to be no technical barriers in the way, and a court of equity is now at liberty to follow the dictates of conscience.

The conclusion is that the demurrer to the plea of *res judicata* set forth in the amended answer of Mary E. Haviland is well taken, and is therefore sustained.

The question then arising in respect to her answer to the second amended answer and cross-petition of the Tribune Fresh Air Fund Society, is whether she can amend so as to present a valid defense.

Judgment may be rendered upon the pleadings, according to this opinion, unless good cause may be shown to the contrary.

. Searching the record upon the demurrer, and considering the demurrer to the reply of plaintiff in the same connection, which is also overruled, it is apparent that the plaintiff and the cross-petitioners are entitled to the relief asked for by them according to the decision reached by this court.

Ignoring the plea of *res judicata,* the question is then only of priorities between the judgment creditors and Mary E. Haviland. .

The priorities may be considered from two standpoints, namely: One from the viewpoint of the conduct of Mary E. Haviland; the other as the dates of the judgments of the creditors, and of Mary E. Haviland, and the operation and effect of Section 4134, Revised Statutes, upon each of the judgments.

As to the first, the conduct of Mary E. Haviland, there is much to be considered, and it covers a great period of years.

She avers that on or about the year 1863, having about the sum of $2,500, she loaned the same to her husband; that in the middle of 1882, nineteen years after the loan, and the limitation had run, upon her demand, and to repay her Michael Haviland deeded her the property, consisting of three parcels, being farm land and city lots, and part of the same property described in the petition of plaintiff; that the deed was duly delivered to a trustee and by the trustee to her, but that the same were not recorded; that she kept the deeds in her possession in her private box until some time in the year 1890, when she discovered that they were missing and her husband admitted to her that he had

destroyed them; that they were destroyed without her knowledge; that on her demand he refused to restore them, but that he told her he would make a will and leave all to her, but she still insisted upon his making the deeds, which he refused and neglected to do.

From the year 1890 or 1891, when the deed was destroyed, she demanded a new deed and he refused, promising to make a will and give her all his property. Until the death of her husband she acquiesced and made no further complaint about the deed, so far as the pleadings show. This was four or five years afterwards, he having died October 31, 1895. The will being admitted to probate, Mrs. Haviland actually went into possession of all her husband's property November —, 1895, and actually sold some of it, as devisee.

It appears that Michael Haviland purchased the property in question with his own means, leased it and collected the rents, paid the taxes, exercised full control over it with full knowledge, consent and approval of his wife, from the time of the destruction of the deed until his death.

On August 21, 1897, Margaret Fleming brought an action on the bond of Ripley C. Hoffman, executor of Margaret Fleming, against the bondsmen; and Michael Haviland being one of the bondsmen, the deceased, Mary E. Haviland, as administratrix of his estate, was made a party defendant. This action proceeded until upon demurrer to the petition on a question of bond liability, arising by virtue of the provisions of the will, judgment was rendered, and error was prosecuted to the Supreme Court. The case was there decided on April 22, 1902, finding the Michael Haviland estate liable.

Thereupon Mary E. Haviland resigned as administratrix and Hiram S. Bronson was appointed. This action on her part was taken with the evident purpose of bringing the action to restore the deed, not *lost,* but *deliberately destroyed* by her husband, which was filed by her May 31, 1902.

From the date she discovered that her deeds were destroyed in 1890 or 1891 to the date of her suit, May 31, 1902, eleven or twelve years had elapsed, during which period she had remained silent, and allowed the creditors of her husband to know noth-

ing about her claims. In the meantime, she had accepted the terms of the will and was operating as devisee thereunder. She had followed the bond liability suit from 1897 to April 22, 1902, five years, and did not discover the need of her *destroyed* deeds until the Supreme Court fixed the liability.

She thereupon proceeded with her *equity* suit to restore the *destroyed* deed, to keep the judgment creditors from getting the property. She had fought them for five years resisting the liability without taking this new role of owner by deed.

The suit filed by her was against only the administrator of her husband's estate and the heirs. The creditors were not invited into her suit by summons, and strange to remark, she was able to put them out by motion, and successfully closed the doors of the court of equity to them in that suit.

Fortunately for them, however, they were already in a court which administers both law and equity, and their action was *lis pendens* against the property which she was seeking to recover in defiance of their rights.

This doctrine of *lis pendens,* if it did not operate upon her conscience, charged the land which she is trying to withdraw, and now operates against her rights with much force. It is a strong ballast to the equitable doctrine of estoppel now operating against her. Collusion is charged against her in the action to restore the destroyed deed, and therefore it may be X-rayed irregardless of the plea of *res judicata.*

*De hors* the pleadings in question upon the demurrer, the original papers in her case being placed in the hands of the court it appears to have been a friendly action, as all of the nominal defendants entered their appearance. The defendants did not have much concern in the action because all the property went to Mrs. Haviland under the will; and if she didn't get it these judgment creditors would, so it was not of much concern to the heirs, and the administrator would not be concerned, unless it would be necessary to sell it to pay debts. But this officer, so far as he represented any tangible right, was like a fifth wheel to a wagon in that action. He can only sell real estate to pay debts when it is there. And the only complaint he can make when it has gotten out of his decedent's name, is when the dece-

dent himself had conveyed it away in fraud of creditors. He can not complain when the widow withdraws it from the creditors, by an alleged equity suit, so that his appearance in that case meant nothing, except that what he did do in the circuit court in failing to press the motion for new trial, and approving the entry, without exception, simply made it easier for Mrs. Haviland to get her decree, and unwittingly supports the claims in plaintiff's reply.

The whole conduct of this case militates against Mrs. Haviland by way of estoppel.

The most damaging thing in it all was the fact that her right of action was barred by the statute of limitation. Her action was one in equity and the ten year limitation applies.

It may be remarked here that equity ordinarily restores only lost instruments. These deeds were not lost, but destroyed deliberately by the grantor, the husband of the grantee.

These creditors not being parties to that action can now make such claims as this. Is it not a novel idea to compel the restoration of a deed destroyed by the grantor, made under the old law, when a trustee had to intervene to make a deed between husband to wife, without making that trustee a party?

Is there really any remedy by a wife in equity against an administrator of her husband's estate, and children of the deceased, to have title to real estate declared in her by virtue of deeds made by the husband for a stale loan to him by his wife, where the husband has deliberately destroyed the deeds before they were placed on record, and long afterwards by the will of the husband the widow as devisee has taken possession of the very property in question? Surely not as against creditors who were not parties. And the suggestion of the question is in no disrespect of the former decree of this court, it not being *res judicata*, and a charge of collusion opens the way, and is as potent against a decree as anything else.

Some very good people unwittingly may be guilty of practicing what turns out to be constructive fraud.

Under *Thompson* v. *Hoop*, 6 O. S., 480, the widow can be held to be estopped from asserting dower in the property by her conduct in actually accepting the will. She surely ought to be

estopped from asserting individual ownership of particular portions of the property in question, especially under all the circumstances, if she is estopped from taking dower by operating under the will.

The conclusion is that Mary E. Haviland is estopped from claiming priority of her title by virtue of the decree as against the judgment creditors, on the ground both, that the decree is not binding on them, and, because the widow is estopped by her conduct, as well.

In *Smith* v. *Willard*, 174 Ill., 538 (66 Am. St., 313), it was held that:

(Syl.) "If a married woman furnishes money to her husband for the purpose of purchasing property for her, instructing him to take a conveyance in her name, and he, on the contrary, takes it to himself, which she permits to stand for seven years and without making any inquiry respecting it, she is estopped as against his creditors from claiming that the property is held in trust for her."

From the opinion:

"Where a married woman holds out to the world that her husband is the owner of property in which she has a resulting trust, or permits him to so act as to induce others to believe he is the owner of such property, third persons, acting reasonably on the strength of such belief, and giving credit to him thereupon, will be protected. * * * The husband afterwards rented the land and collected such rents. After seven years she secured title from her husband, but withheld it from record, during which time the rights of her husband's creditors matured."

The statute of Illinois is much stronger than that of Ohio.

To similar effect: *Taylor* v. *Bell*, 62 Ark., 26; *Pierce* v. *Homer*, 142 Ind., 626; *Hopkins* v. *Joyce*, 78 Wis., 443; *Minnich* v. *Shaffer*, 135 Ind., 634; *Schwartz* v. *McClelland*, 31 Feb., 646; *Hamlen* v. *Bennett*, 52 N. J. Eq., 70.

The second point which may be considered in sustaining the demurrer to the answer of Mary E. Haviland, and in overruling the demurrer to the reply of Margaret L. Fleming, involves the dates of the judgments of the creditors, and of that of Mrs. Haviland, and the operation of Section 4134, Revised Statutes, upon each of the three judgments.

First as to the facts:

April 22, 1902, the Supreme Court affirmed that action.

June 18, 1904, judgment in the common pleas was rendered in favor of Mary E. Haviland, restoring her title.

November 11, 1904, judgment was rendered for Margaret L. Fleming for $2,115.

September —, 1904, the date of the lien of her judgment.

June 17, 1905, judgment for the Tribune Fresh Air Fund Society for $9,189.96.

February 12, 1906, the final judgment by the circuit court was rendered in favor of Mary E. Haviland.

The lien of the Fleming judgment took effect September —, 1904.

That of the Tribune Fresh Air Fund Society from April —, 1905.

In considering the priorities of the judgments the only question is whether the date of the Haviland decree shall be as of the judgment rendered by the common pleas or circuit court.

By Section 5235:

"When an appeal is taken, and bond given, the judgment is thereby suspended, etc., unless some part be an injunction."

This section coupled with the previous sections is intended merely for the purpose of providing a mode of staying the execution of the judgment to enable the appellant to take his case up on appeal, when the execution would destroy appellant's right.

The next section, 5236, provides that:

"When the party against whom a judgment is rendered appeals his cause to the circuit court, the lien of the opposite party on the real estate of the appellant, created by the judgment, shall not be removed or vacated by the appeal; but the real estate * * * shall be bound, in the same manner as if the appeal had not been taken, until the final determination of the cause in the circuit court."

. It would seem to be the intention of these two statutes merely to provide for the two conditions, and none other, viz: (1) to prevent the issue of execution by the prevailing party which

would render useless the appeal by the defeated party; and (2) to preserve the lien of the class of judgments which operate as a judgment upon the lands of the judgment debtor to prevent him from disposing or encumbering the same, or to prevent other intervening liens, pending the appeal.

As appeals can only be taken in civil actions wherein the right of trial by jury does not exist, it follows that Section 5236 can apply only in a limited number of equity cases, where a money judgment is rendered as the final judgment in the case, as in foreclosure, accounting, contribution, specific performance where money judgment is rendered in the alternative.

Judgments rendered in such cases are the only ones coming within these sections, so that reformation, subrogation, restoration such as the Haviland decree, stand upon a different basis.

It may be, however, that an appeal does not operate to vacate or annul the judgment in a case like the one in hand, but merely suspends its execution or enforcement during the pendency of such appeal, as stated recently by the Supreme Court in a case where the sole question was whether error proceedings could be prosecuted to the judgment appealed from before the appeal is settled. *Jenney* v. *Walker,* 79 Ohio St.

But it does seem that in the consideration of the question of pure equitable priorities between these three judgments in view of the section of our statutes relating to registration of conveyances, in determining the relative equitable rights of the parties, the date of the final decree in the circuit court, February 12, 1906, may be considered as the governing date in view of Section 4134, Revised Statutes, if the judgment is to be considered as coming within that section at all, rather than June 18, 1904, when the Haviland decree was rendered in the common pleas court.

Especially should this be so in view of all the facts which have already been held sufficient to operate to estop Mrs. Haviland from asserting her judgment as conferring upon her a title superior to these judgment creditors.

Especially should this be true, in view of the fact that her judgment is not binding upon the judgment creditors, who may now urge as an equity that by virtue of Section 4985, Revised

Statutes, her action was barred as against them. As already stated they were the only class of persons in view of the Haviland will who had any substantial interest in her suit.

From this viewpoint of the case, looking to the effect of the judgment of Mrs. Haviland in its relation to Section 4134, Revised Statutes, and the operation of that statute, the question is whether or not her judgment can be considered as the recording of her conveyances; and if so, whether it shall be as of the date of the judgment in the common pleas, June 18, 1904, or in the circuit court, February 12, 1906.

In equity, as already held, she is estopped from asserting her priority, so that this would seem to dispose of the question just proposed. This is the view taken.

But, furthermore, the Haviland decree not seemingly coming within the purposes of the two statutory provisions in appeal cases above referred to, it would be reasonable, and especially equitable under the facts here, to consider the date of her record of title as that of February 12, 1906, which would make her title inferior to the lien of the judgment creditors, which is the view of the court.

This must be the rule, unless she is entitled to the advantage of a doctrine pertaining to priorities between judgment liens and unrecorded conveyances maintained by some authorities, to the effect that the judgment lien is not entitled to priority over an unrecorded conveyance where the judgment creditor learns of the unrecorded conveyance before his judgment is taken. Pomeroy's Eq. Jur., Section 722 (last edition), and authorities cited.

It is apparent that the judgment creditors learned of the unrecorded *destroyed* deeds when Mary E. Haviland brought her suit to have them restored, May 31, 1902.

But this rule is not applicable, because of the equities arising from the conduct of Mrs. Haviland in favor of the creditors, which estops her.

And it is not applicable, because the decisions sustaining the above rule have been between judgment creditors and the holder of an unrecorded deed actually recorded, and not under circumstances as in this case, where the question is between judgment creditors, resisted by the claimant of a conveyance deliberately

destroyed by the grantor, and eleven or twelve years thereafter such claimant brings an action to restore the same.

It is a well understood rule that a judgment becomes a lien upon that interest only which the debtor has in the real estate, at the time of the rendition thereof. If the lands in the hands of the judgment debtor are subject to a trust contract of sale, or other equities, the lien of the judgment becomes subject to and is subordinate to these equities. *Leonard* v. *Broughton,* 120 Ind., 536 (16 Am. St., 347; 96 Am. Dec., 346).

If a wife in good faith furnishes her husband money to buy lands, and directs him to take title in her name, but he takes it in his, a resulting trust results, and her interest can not be affected by his judgment creditors, so long as she is not guilty of laches and conduct to the injury of his creditors.  *Miller* v. *Baker,* 166 Pa. St., 414 (45 Am. St., 680).

If the wife claiming by an unrecorded deed be guilty of laches, especially such as flagrant as appears in this case, and especially where she takes by will and then undertakes to take under a *destroyed* deed long acquiesced in by her, the equitable rule applied in such case by a number of decisions is that her rights are inferior to those of judgment creditors of her husband.

This deed was given by husband to wife for a *past* consideration for a loan made many years before. Such conveyances or securities for such consideration are not favored. *Wheeler* v. *Kirtland,* 24 N. J. Eq., 552; *Dwight* v. *Newell,* 3 N. Y., 185.

The registration statutes in some states protect judgment creditors as well as *bona fide* purchasers, but Section 4134, Revised Statutes, does not provide for any but *bona fide* purchasers. Conveyances, unrecorded only as to them, are deemed fraudulent.

*Wright* v. *Bank,* 59 O. S., 80, is cited as authority in support of Mrs. Haviland, which was a case where it was sought to reach lands held in trust; the only reference in that decision pertinent here is just what Section 4134, Revised Statutes, provides that a deed as against subsequent *bona fide* purchasers, without notice, must be recorded, but such record is not required as against other parties.

It seems entirely clear that a proper construction of this section completely eliminates not only judgment creditors as to their

lien, but any one who claims title by virtue of a judgment or decree, the position of Mrs. Haviland here.

Mrs. Haviland can not claim anything from the section, because, conceding that she once held an unrecorded deed from her husband, he never made another deed for the same property, and the section is only to protect subsequent *bona fide* purchasers. She was not a *bona fide* purchaser within the statute, because there is no conflict between her as a subsequent purchaser, there having been no conveyance by her husband previous to hers upon which the statute could operate. She would not occupy a very desirable position as a *bona fide* purchaser.

In *Morris* v. *Daniels,* 35 O. S., 413 (cited by counsel for Mrs. Haviland), the court said:

"Under this statute a subsequent purchaser will not be protected against a prior unrecorded deed, unless the purchase be made in good faith, and for a valuable consideration, and without knowledge at the time of the existence of the former deed."

There is no such situation here. Mrs. Haviland is not a subsequent purchaser. She slept on her rights, satisfied with conditions, until the judgment creditors' suits intervened.

The question of priority in this case, therefore, is one appealing to the conscience of the court.

Looking to the dates, considering the judgment of Mrs. Haviland as of February 12, 1906, which may be done as before explained, the judgment of Margaret L. Fleming is first, that of the Tribune Fresh Air Fund Society, second, and that of Mary E. Haviland, third.

This conclusion is justified from all the facts and circumstances herein above stated.

Practically the same idea is embodied in *Van Thornuly* v. *Peters,* 26 Ohio St., 471, which was a contest of priority between one holding a defective mortgage who sought to have it reformed, and subsequent judgment creditor.

The court held that:

"A defective mortgage when reformed will not affect the lien of a judgment rendered between the date of the execution and *the reformation* of the mortgage."

As between the holder of the defective mortgage and the judgment creditors, the court ordered the distribution in favor of the judgment creditors.

In Minnesota, where there is a statute which places docketed judgments upon the same footing as a recorded conveyance, and gives to it precedence over an unrecorded deed, unless the judgment creditor have other notice of the unrecorded conveyance, it was held in *Wilcox* v. *Bank*, 43 Minn., 541 (19 Am. St., 259), that a "judgment has precedence * * * over a mere equity on the part of a grantee, of which the judgment creditor has no notice, to have a deed reformed as to make it include the real estate in question."

There was no suit commenced, or a decree in equity in that case, as there is in the one at bar.

The principle expressed in *Coe* v. *Erb*, 59 O. S., 259, has some bearing by analogy. There a judgment was rendered, but no entry had been actually put upon the record. In the meantime a *bona fide* purchaser had taken the property. A *nunc pro tunc* entry of the judgment was sought so that the lien would antedate the conveyance. This was held inequitable.

And so is it inequitable to permit the judgment in favor of Mrs. Haviland even if it actually antedates the judgments to come in ahead of the judgments.

Almost the precise situation is presented in *Sternberger* v. *Ragland*, 57 Ohio St., 148.

William Ragland purchased a lot, gave a mortgage to his grantor for unpaid purchase money, which was recorded, but the deed was never filed for record.

Judgments were recovered against Ragland's grantor after the conveyance was made and the mortgage was recorded. Executions were levied, the property sold, and the judgment creditor became the purchaser. The holding was:

"Where a judgment debtor appears of record to be the owner of real property, it is subject to the liens of judgments recovered against him and to judicial sale thereunder; and a *bona fide* purchaser at such a sale, without notice of an unrecorded deed, made by the judgment debtor before the rendition of the judgment, is within the protection of the statute and ac-

quires the title as against the grantee in the deed, and in this respect the rights of the judgment creditor, when he becomes the purchaser, are not different from those of other purchasers at judicial sales.''

The demurrer to the amended answer of Mary E. Haviland is sustained. The demurrer of Mary E. Haviland to the, reply of the plaintiff is overruled.