BLAKE, Appellant, v. HANSEN, et ux, Respondents.

(266 N. W. 733.)

(File No. 7834. Opinion filed April 16, 1936.)

*Henry Howard*, of Denver, Colo., and *W. R. Cleland*, of Vermillion, for Appellant.
*Alan Bogue*, of Parker, for Respondent.

ROBERTS, J. This is an action to set aside conveyances to a wife and to subject the land to a judgment against the husband. Upon the trial of the action the court found the issues in favor of the defendants. Plaintiff appeals.

■ The judgment which plaintiff is seeking to collect was obtained against defendant Ferdinand Hansen and others on March 17, 1932, for $11,616.26, in an action upon an executor's bond. When this bond was executed in June, 1930, Ferdinand Hansen owned a quarter section farm in Clay county, mortgaged for $2,500, a dwelling in Wakonda occupied by defendants as their homestead, and a small amount of personal property. On or about October 10, 1931, Ferdinand Hansen received a letter from plaintiff's attorney demanding a settlement of a claim alleged to have resulted from a breach of the bond and stating that, if payment was not made, action would be instituted upon the bond. On October 19, 1931, and December 21, 1931, he executed deeds to his wife, conveying an 80-acre tract in each deed. An action upon the bond followed, resulting in judgment against the sureties. After execution had been issued and returned unsatisfied, the instant action was commenced to set aside the deeds on the grounds that they were made without consideration and for the purpose of defrauding creditors.

The court found that the transfers of the land subject to the mortgage rendered the grantor insolvent, but that the conveyances were made for a full and fair consideration and made for the purpose of paying and satisfying an antecedent debt due from the husband to the wife and in making the transfers they acted in good faith. It appears from the evidence that defendants, Ferdinand Hansen and Mary C. Hansen, were married in 1889; that in 1891 she sold to her husband 4 horses, 20 head of cattle, and other personal property of the agreed value of $1,800, which she acquired from the estate of her former husband; that in 1905 the wife loaned to the husband $1,200, which he applied upon the purchase price of a 40-acre tract of land; and in the year 1910 the wife conveyed to him at the agreed price of $3,340 her interest in land which she inherited; and that she received no notes and held no written evidence of these transactions. Both testified that at the time of the making of the loan and transfers there was an

agreement expressed that the wife was to receive payment therefor together with interest. The husband at the time of the execution of the bond justified in the amount of $25,000, but it does not appear that this was done with the knowledge of the wife. Appellant contends that the evidence is insufficient to support the findings of the trial court to the effect that there was a definite agreement for repayment.

In Churchill & Alden Co. v. Ramsey, 50 S. D. 73, 208 N. W. 406, 407, this court said: "In view of the relation between husband and wife, the law does not imply, merely from the receipt by the husband of the proceeds of sale of property standing in the wife's name, a promise on his part to repay or replace the same, as it might between strangers. There must be either an express promise to repay, or such attendant circumstances as affirmatively establish the fact that the husband and wife in the particular transaction dealt with each other as debtor and creditor." We think that it can fairly be said under the evidence in this case that Mrs. Hansen was a creditor to the extent of the value of the real estate and that the conveyances were made to her in pursuance to an oral agreement to repay. A debtor in failing or insolvent circumstances may prefer one creditor, notwithstanding it may be to the exclusion of others; and this rule may include the wife of the debtor who is a creditor. Churchill & Alden Co. v. Ramsey, supra.

In Meloy v. Kell, 53 S. D. 388, 220 N. W. 863, 864, wherein the facts were similar to those in the instant case, this court said: "Whether J. W. Meloy was honestly indebted to respondent was a question of fact for the trial court to determine. The trial court found that she was such a creditor, and that she paid full consideration for the premises. The trial court was not bound to accept as true the testimony of respondent and her husband merely because there was no other direct evidence concerning it. * * * It was the duty of the trial court to find on this point on the whole evidence, including all the conduct of respondent and her husband and all the facts and circumstances shown, and in the light of its judgment as to credibility. Where the credibility of witnesses enters into a finding of the trial court as a controlling factor, only the most convincing circumstances will justify this court in reversing the same."

A review of the entire record does not convince us that the findings of the trial court are against the clear preponderance of the evidence.

The judgment and order appealed from are affirmed.

CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

POLLEY, P. J. (dissenting). I am unable to agree with the majority opinion in this case; nor do I think the statement of facts in the opinion sufficient to give a fair view of the issues involved. The acton was brought for the purpose of having two warranty deeds executed by defendant Ferdinand Hansen, conveying to the defendant Mary C. Hansen 160 acres of land in Clay county, canceled and set aside.

Said defendants were married in 1889, and from that time down to and including the time of the trial of this action lived together as husband and wife. During the month of June, 1930, defendant Ferdinand Hansen, together with five other parties, executed an executor's bond for one Sam Jacobson, in the sum of $150,000. Upon the execution of said bond said defendant made an affidavit that he was worth $25,000 over and above all his debts and liabilities and exclusive of all property exempt from levy and sale on execution.

At the time of making said affidavit said defendant owned real property in the town of Wakonda that was used and occupied by said defendants as their homestead; some personal property, but not equal in value to his exemptions, and 160 acres of farm land some 5 or 6 miles from Wakonda, which land was subject to an existing mortgage for $2,500.

At the time said defendant qualified on said bond, the said farm land was all the property of any kind that he owned that was not exempt from levy and sale on execution, and it was not worth at that time, nor at any other time, as much as $25,000, and at the time of the trial he testified that said land was not worth more than $50 an acre. The effect of said affidavit at the time it was made was that said land was worth $25,000 in excess of the $2,500 mortgage and that he did not owe a dollar to anyone except the said $2,500.

Sam Jacobson, the principal on the said bond, failed to properly account for the property that came into his hands as such ex-

ecutor, and the sureties on said bond were called upon to pay such shortage. This they failed to do, and suit was brought on the bond to recover the same. Thereupon, and on the 19th day of October, 1932, defendant Ferdinand Hansen executed a warranty deed, whereby he conveyed to his wife title to 80 acres of the above-mentioned farm land, and on the 21st day of December, 1932, he executed a second warranty deed whereby he conveyed to his wife the remaining 80 acres of said land. The consideration named in each of said deeds is $1 and other valuable consideration, but no money or anything else of value passed from the said grantee to the grantor in said deeds in consideration for the said conveyances.

The above-mentioned suit on said bond was prosecuted to the end that on the 17th day of March, 1932, judgment was entered against the defendants, including the said Ferdinand Hansen, in the sum of $11,645.06. Execution was issued on said judgment, but was returned unsatisfied, and plaintiff in the said action thereupon brought this action to cancel and set aside the said conveyances upon the grounds that they were made without consideration, and for the purpose of hindering and delaying their creditors, especially said plaintiffs, in the collection of the said judgment.

By these conveyances Ferdinand Hansen disposed of all the property he had, other than what was exempt, and rendered himself totally insolvent. These facts were known to his wife when the conveyances were made. She knew, too, that suit had already been, or was about to be, commenced against the sureties, including her husband, on the said executor's bond, and that the said conveyances were being made at that particular time for the purpose of putting said property beyond the reach of the judgment creditors.

As a justification for making said conveyances, defendants claim that at the time the conveyances were made Ferdinand Hansen was indebted to his wife in the sum of more than $16,000, including interest, and that the said conveyances were made in payment of said indebtedness. In support of the existence of this indebtedness, defendants claim that back in 1891 the wife sold to Ferdinand Hansen 4 head of horses, 20 head of cattle, some 30 hogs, and around 300 chickens; that such livestock was worth

$1,800, which sum of money he was to pay some time in the future; that in 1905 she advanced him $1,200 in cash. This sum he was also to pay some time in the future. Then in 1910 she deeded to him 40 acres of land of the claimed value of $3,340, which sum he was to pay when he had the money, or, in lieu of such payments, he was to deed her some land; but no note or other evidence of indebtedness was taken by her. He was to pay interest on all these sums of money, but no rate of interest was ever agreed upon. No one but themselves ever heard of these transactions, or that any indebtedness existed between them, and Mary C. Hansen testified that she did not remember ever having talked with her husband about the matter until the question of liability on the bond came up. She also testified that she never asked her husband for any money until after this trouble came up, and, when asked why she took the deeds, she testified, not that she took them in payment of a debt her husband owed her, but that "I thought that by taking these deeds I could keep this property." The trial court found, as a matter of fact, that the defendants, in the making of said conveyances, acted in the utmost good faith without any intention to hinder or defraud his creditors, and for a full and adequate consideration. As between themselves this finding may find support in the evidence, but all the surrounding circumstances must be taken into consideration. The husband was heavily in debt; he was being pressed for payment. He deeded away to his wife all the property he had with which he could pay his debts. All the indebtedness to his wife was based on the three above-mentioned claims, the most recent of which was more than 20 years old, and the oldest more than 40 years old. The question is, May she, after having waited all these years, and permitting her husband to obtain credit on the strength of his apparent ownership of the land, use such claim to defeat the claims of the judgment creditors?

In Churchill & Alden Co. v. Ramsey, 45 S. D. 454, 188 N. W. 742, 744, we approved the following rule: "In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof" (citing numerous cases), and such proof must be clear and convincing. I do not think the proof as above set out satisfies the requirements of this rule. The testimony of Ferdinand

Hansen is entitled to but little, if any, consideration. The most charitable view that can be taken of it is that, if he ever considered himself indebted to his wife, he had not heard it mentioned for so long a time that he had forgotten it ever existed. But, after having sworn that he was the owner of the farm, free and clear of all incumbrances except the said $2,500 mortgage, and that he did not owe a dollar to any one, he ought not now to be heard to say that when he made such affidavit he owed his wife more than enough to absorb the entire value of the farm. The testimony of the wife is also most unsatisfactory. Practically all of her testimony was elicited by the use of leading questions that suggested the answer she was to give. This, taken in connection with her testimony, "I thought that by taking these deeds I could keep this property," renders her testimony very unsatisfactory.

Still another rule that is generally recognized is to the effect that, where a wife permits her property to remain in her husband's name, and he obtains credit on the strength of such apparent ownership, she is precluded from denying his title as against one who has extended credit in reliance upon the strength of such apparent ownership. The right of the creditor arises from the act of the owner, and does not depend upon the actual title but upon the apparent title. And in such cases she is estopped from maintaining her ownership. Otherwise injustice would be done to the creditor. Between the innocent owner and the innocent creditor the owner, whose act led to the wrong to the creditor, must suffer the loss. Goldberg v. Parker, 87 Conn. 99, 87 A. 555, Ann. Cas. 1914C, 1059, 46 L. R. A. (N. S.) 1097; Sears v. Davis et al, 40 Or. 236, 66 P. 913; Culver v. Graham, 3 Wyo. 211, 21 P. 694; Chaney v. Gauld Co. et al, 28 Idaho, 76, 152 P. 468; Hopkins v. Joyce, 78 Wis. 443, 47 N. W. 722; Besson v. Eveland, 26 N. J. Eq. 468; Anderson v. Armstead, 69 Ill. 452; Roy v. McPherson et al, 11 Neb. 197, 7 N. W. 873; Taylor Commission Co. v. Bell, 62 Ark. 26, 34 S. W. 80; Minnich v. Shaffer et al, 135 Ind. 634, 34 N. E. 987; Zimmer v. Dansby, 56 Ga. 80; Warner v. Watson, 35 Fla. 402, 17 So. 654.

I believe that, under the facts and circumstances shown by the evidence in this case, the conclusions of law and judgment should have been for the plaintiff, and that the judgment ought to be reversed.