Merrimack
No. 7038

JANE A. REEN v. ROBERT E. BERTON & a.

July 31, 1975

*Upton, Sanders & Smith (Mr. Frederic K. Upton* orally) for the plaintiff.

*Snierson, Chandler & Copithorne (Mr. John P. Chandler* orally) for the defendant Phyllis C. Berton.

PER CURIAM. The question to be decided by this appeal is whether the equitable doctrine denying relief to those who do not have "clean hands" bars the plaintiff, a judgment creditor of Robert E. Berton, from setting aside a conveyance of real estate which the trial court found to be fraudulent under the terms of RSA 545:4 (Uniform Fraudulent Conveyances Act: Conveyance, by Insolvent). *Keller,* C.J., reserved and transferred plaintiff's exceptions to the dismissal of her petition to set aside the conveyance.
Plaintiff's claim arises from a relationship between the parties

in which Robert Berton married Jane Reen while he was still Phyllis Berton's husband. Robert Berton first met Jane Reen in Chelmsford, Massachusetts, in October 1966. About one month after they met, Robert told her that he was married, but represented to her that he had not lived with his wife for five to six years. By April 20, 1967, the relationship between Robert Berton and Jane Reen had blossomed to the degree that Robert asked Jane, and she agreed, to marry him provided that he secured a divorce from Phyllis.

From May 1967 until September 1968 Robert recounted to Jane the progress of divorce proceedings which he had never initiated. During the period of their supposed engagement Robert was in effect living two lives, dividing his time between Jane and his family who were living in Bristol, New Hampshire, where they had purchased a store. Neither Jane Reen nor Phyllis Berton suspected Robert's dual existence.

On September 28, 1968, Jane Reen went through a marriage ceremony with Robert Berton in Concord, New Hampshire, under the false impression that he had secured a final divorce from Phyllis. The "newlyweds" departed for California where they lived together until June 1969, when Robert suddenly returned to New Hampshire and Jane followed him. On the pretext of helping Phyllis Berton with the store in Bristol, Robert reestablished the tripartite relationship that had prevailed prior to his marriage to Jane Reen. While Jane knew that he spent considerable time in Bristol, she did not know that Robert had never divorced his first wife.

In January 1970, Jane Reen and Phyllis Berton learned for the first time that they were both married to Robert Berton. Robert pleaded guilty to the charge of bigamy and received a suspended sentence on February 6, 1970. By a warranty deed dated February 6, Robert Berton, as a joint tenant with his wife Phyllis, conveyed to her for less than $100 his undivided one-half interests in two tracts of land situated in Bristol, his only remaining assets.

On April 24, 1970, the plaintiff, Jane Reen, sued Robert Berton for fraudulently inducing her to enter into a bigamous marriage. Pursuant to an agreement on December 1, 1971, between the parties and their attorneys which the trial court ruled was not collusive, Jane Reen recovered a judgment of $35,000, $5,000 of which was to be paid personally in installments by Robert Berton and the remaining $30,000 of which was to be satisfied by efforts to set aside any fraudulent conveyances. Jane Reen petitioned to set aside the February 6, 1970, conveyance from Robert to Phyllis Berton.

As the result of a petition for legal separation from Robert Berton, Phyllis Berton was awarded custody of their three dependent children and the payment of $50 per week for support by an order dated May 16, 1970; a final divorce was granted January 24, 1973. Robert Berton died on April 28, 1974.

The trial court determined that the plaintiff was "at the time of the conveyance from Robert Berton to Phyllis Berton on February 6, 1970, a creditor of Robert Berton, within the meaning of the Uniform Fraudulent Conveyances Act." RSA 545:1 (Definitions); see 7 Uniform Laws Annot. 432 (1970); id. (Supp. 1975, at 252); 32 Mich. L. Rev. 705, 705-06 (1934); McLaughlin, *Application of the Uniform Fraudulent Conveyance Act,* 46 Harv. L. Rev. 404, 438 (1932). Although the court ruled that the conveyance was fraudulent under RSA 545:4 because it was made without fair consideration and rendered Berton insolvent, it held that setting the conveyance aside would be inequitable since the plaintiff probably would not have suffered damages as a result of the bigamous marriage if she had not entered into the illicit relationship with Berton and since the "value of Berton's interest in the real estate was no more than Phyllis was justly entitled to under the circumstances." The court specifically found that for about one year prior to the marriage ceremony on September 28, 1968, Jane Reen and Robert Berton "were having sexual relations with each other, both of them knowing this to be adultery."

The Uniform Fraudulent Conveyances Act was enacted in New Hampshire in 1919 against the existing background of the common law, including the equitable doctrine of "clean hands" which has been characterized as a "picturesque phrase" permitting a court to consider the element of plaintiff's fault in its resolution of a legal dispute. Uniform Fraudulent Conveyances Act, Prefatory Note (1918); Chafee, *Coming Into Equity With Clean Hands* (Pt. II), 47 Mich. L. Rev. 1065, 1091-92 (1949); see *Nashua Hospital v. Gage,* 85 N.H. 335, 343, 159 A. 137, 141 (1932); 2 J. Pomeroy, Equity Jurisprudence § 397 (1941). While applying the "clean hands" doctrine to fraudulent transfers of property is not unknown, it is a novel question under § 4 of the Uniform Act. *See* 7 Uniform Laws Annot. 490 (1970); id. (Supp. 1975, at 256); Chafee, *Coming Into Equity With Clean Hands* (Pt. I), 47 Mich. L. Rev. 877, 887-90 (1949).

An examination of Jane Reen's behavior on the basis of the findings of the trial court reveals that although she committed adultery with Robert Berton, she did so under the honest belief that she was engaged to be married and that the divorce permitting their

marriage was imminent. The trial court determined, and the record sustains, that the "fraud and deceit of Berton was the immediate cause of the bigamous marriage." Under these circumstances Jane Reen no less than Phyllis Berton was an innocent victim of Robert's extramarital machinations.

Where, as in this case, two guiltless victims of artifice claim the same property, innocently "soiled hands" on the part of one is an insufficient reason to deny the relief expressly provided by the legislature in RSA 545:4.

RSA 545:4 states, however, that "[e]very conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors, without regard to his actual intent . . . ." if made without fair consideration. RSA 545:1 broadly defines a "creditor" as a "person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent . . . ." At the date of the conveyance of Robert Berton's interest in the Bristol properties on February 6, 1970, both Jane Reen and Phyllis Berton had unmatured claims against Robert Berton. As the holder of an unliquidated tort claim which was reduced to judgment by agreement on December 1, 1971, Jane Reen was a creditor of Robert Berton within the meaning of that term in RSA 545:1. *See* V. Countryman, Cases and Materials on Debtor and Creditor 187 (1964). By virtue of her right to support resulting from a court order dated May 16, 1970, Phyllis Berton was also a creditor of her husband. RSA 545:1; RSA 458:7 II (Causes for Divorce, Absolute Divorce); RSA 458:17 (Support of Children).

Under certain circumstances § 4 of the Uniform Fraudulent Conveyances Act has been interpreted to permit a husband to prefer his wife to other creditors. *Louis Dreyfus Corporation v. Butler,* 496 F.2d 806, 809 (6th Cir. 1974); *Blake v. Hansen,* 64 S.D. 356, 358, 266 N.W. 733, 734 (1936); 7 Uniform Laws Annot. 485-86 (1970); *id.* (Supp. 1975, at 256). Since the trial court specifically found that the conveyance of February 6, 1970, was made by Berton in order to provide for his family, Berton's preference to satisfy his familial obligations, rather than his responsibilities to Jane Reen, may not be set aside.

*Exceptions overruled.*