[Civ. No. 2742. Fourth Dist.—May 13, 1941.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Respondent, v. EMIL A. BRUDER et al., Appellants.

Jerrell Babb for Appellants.

Thorpe & Bridges for Respondent.

KELLY, J., *pro tem.*—On the 16th day of February, 1935, the appellant Emil A. Bruder executed and delivered to the appellant Alice E. Coulter a grant deed whereby he conveyed to her certain property in Culver City, Los Angeles County. In the year 1930 Bruder made and executed a promissory note to one Alice Steele Ammerman to secure which he shortly thereafter executed a mortgage to the payee covering a ranch in San Fernando Valley. Thereafter the note and mortgage were assigned to the respondent Security-First National Bank of Los Angeles. On July 13, 1935, the bank filed its complaint praying for a foreclosure of the mortgage. Bruder defaulted and a decree of foreclosure was entered on September 18, 1935. The property was sold and the proceeds of the sale applied in partial satisfaction of

the foreclosure judgment. The plaintiff in said action, respondent here, bid in the property for the sum of $5,728.85. The principal sum specified in the note and mortgage was $7,640. With accumulated interest, costs and counsel fees the foreclosure judgment was in the sum of $9,946.38. After applying the proceeds of the sale in partial satisfaction as aforesaid, a deficiency remained in the sum of $4,372.28, for which judgment was duly entered.

In addition to the San Fernando property, foreclosed on as aforesaid, Bruder owned at the time of the conveyance to Coulter two other parcels of land, one on Jefferson Street, Los Angeles, encumbered for approximately $2,600, and one on East 47th Place, Los Angeles, encumbered for approximately $2,500. There is evidence in the record that the property foreclosed on was as of February 16, 1935, of the value of $31,350. The Jefferson Street property was of the value of $10,316, and the East 47th Place property of the value of $6,680, making a total of $48,346. The total encumbrances amounted to approximately $12,500 which, subtracted from the gross value of the three several parcels, left an equity as of the date indicated in the amount of $35,846. Thereafter, and on September 17, 1936, the Security-First National Bank filed its complaint against Emil A. Bruder and Alice E. Coulter, together with certain fictitiously named defendants, wherein and whereby it was alleged that the conveyance by Bruder to Coulter on the 16th day of February, 1935, was without consideration and with the intent to hinder, delay and defraud the creditors of Bruder, and that the defendant Bruder was at such time insolvent or contemplating insolvency, and that the defendant Coulter accepted said conveyance from Bruder with the intent to hinder, delay and defraud the creditors of Bruder and claimants against his property. The complaint was answered by the defendants Emil A. Bruder and Alice E. Coulter, and issues having been joined, the case was tried by the court without a jury.

As to the issue of fraud, the trial court found as follows: "That it is true that on the 16th day of February, 1935, said defendant Emil A. Bruder, without consideration and with the intent to hinder, delay and defraud his creditors, including the plaintiff herein, and claimants against his property, transferred and conveyed the above-described real property and the whole thereof to defendant Alice E. Coulter.

That it is true that the defendant Alice E. Coulter accepted the transfer and conveyance of said real property from the defendant Emil A. Bruder on the 16th day of February, 1935, with the intent to hinder, delay and defraud the creditors of the said Emil A. Bruder, including plaintiff herein and the claimants against the property of said defendant Emil A. Bruder.'' Findings of fact and conclusions of law having been settled, judgment was accordingly entered in favor of the plaintiff and against the defendants Bruder and Coulter, describing the property covered by the mortgage as aforesaid, and as described in the complaint of the bank, adjudging the conveyance fraudulent and void as to the plaintiff and subjecting the property, so far as necessary, to the satisfaction of the plaintiff's judgment for the deficiency as aforesaid. From that judgment this appeal is taken by Emil A. Bruder and Alice E. Coulter, the defendants.

In their specifications the appellants charge that the court erred in its findings sustaining the allegations of fraud as alleged in the complaint and in its conclusions of law pursuant to the findings, and further that the court erred in ordering and rendering its judgment on the ground that the evidence does not support the findings of fact and conclusions of law upon which the judgment is based.

[1.] We find no merit in the appellants' contention as to the insufficiency of the evidence to sustain a finding, conclusion and judgment of actual fraud in the conveyance from the appellant Bruder to the appellant Coulter as of February 16, 1935. The appellant Coulter testified that she was a business friend of the appellant Bruder; that she loaned him money from time to time, taking promissory notes therefor; that the conveyance of February 16, 1935, was in payment of indebtedness evidenced by three promissory notes, one dated February 4, 1934, due one year after date in the principal sum of $2,200; one in the principal sum of $750, dated March 8, 1932, payable one day after date; and one in the principal sum of $16,100.85, dated January 1, 1930, due two years after date. The respective notes were received in evidence. The defendants further testified that neither of the parties kept any record of the several loan transactions other than the notes themselves, and from time to time, on renewals, the original promissory notes were destroyed. The $2,200 note was made up of two or three other

notes including principal and interest. The $750 note represented another note plus cash loaned. The $16,100.85 note was for loans made since 1925, as evidenced by many promissory notes. Both Bruder and Coulter were extremely hazy as to the dates and amounts of the several loans which, in accumulation, produced the sum for which the three specified notes were made. As to the source of the moneys acquired by Coulter and loaned to Bruder, the evidence is most unsatisfactory, improbable and vague, and may indeed be characterized as fantastic.

Appellant Coulter testified that she engaged in clerical work; that prior to 1928 or 1929, she was permanently employed, and subsequent to those years she was employed only part time. When permanently employed she received as compensation for her labor, at times $25 per week and at times $115 per month. For eight years she was employed by a life insurance company doing clerical work at $27 per week. Since 1925 she did not receive any money or property from any source other than her pay. She made application for relief to the SERA and for a few months in 1935 she worked for the WPA. Prior to 1933 she had only been employed intermittently for a period of five years and did not earn enough to support herself. She had no income from any property to amount to anything. The money she loaned Bruder was given her by her sister's husband in 1923. In that year the generous brother-in-law gave her $15,000 in currency mostly in $20 bills. There were no witnesses to the transaction. He told her to take it and put it in her safe deposit box and not to say anything to anyone about it. She testified that she received some $3,500 from her sister's estate. It also appears from her testimony that she had some few liberty bonds which in her years of need she sold from time to time to cover living expenses. Having received the gift of $15,000 she made no report to the assessor and never made an income tax report. It appears abundantly from her testimony that the appellant Coulter was often in need and almost, if not quite, destitute.

Apparently the trial court did not believe either Bruder or Coulter and concluded that the conveyance of February 16, 1935, was wholly without consideration. ▇ The credibility of the witnesses and the weight of their testimony are committed for determination to the trier of facts. It is not necessary to

cite authority for the often reiterated rule that in the absence of error of law, conflicting evidence or conflicting inferences are not to be resolved on appeal if some substantial evidence or reasonable inference supports the conclusion of the trier of facts. On appeal neither should a preference of conflicting theories of fact be expressed nor should conflicting evidence be weighed. The rule cannot be otherwise for many incidents usually attend the reception of evidence, such as the manner of a witness while testifying, his evident embarrassment, his hesitation, the tones of his voice, his manifest bias or prejudice, and his appearance generally when on the witness stand, all of which are properly noted by the trier of facts and may materially contribute to the conclusion reached. These incidents are by their nature not susceptible of record in a phonographic report and cannot be transmitted by any known practical science to an appellate tribunal. "From the very nature of the action direct proof of the fraudulent intent of the parties is an impossibility. For this reason and because the real intent of the parties and the facts of the transactions are peculiarly within the knowledge of those sought to be charged with the fraud, proof indicative of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties." (*Fross* v. *Wotton,* 3 Cal. (2d) 384 [44 Pac. (2d) 350].)

It may be further noted that Bruder testified that he made the challenged conveyance to Coulter because he was "threatened". In further explanation of his meaning he said that the appellant Coulter was pressing him for the payment of the debts due her. In this the appellant Coulter in her testimony failed him, for while destitute, or nearly so, she said she was confident Bruder would pay her when he had the money and did not press him. The trial court having disregarded the testimony of Bruder and Coulter as to the consideration and purpose of the transfer, was further justified in drawing a reasonable inference from what must now be deemed a fabricated situation. We may add that we have not attempted to recite *in toto* the improbable testimony of Bruder and Coulter. Added to that is the testimony of a handwriting expert which casts further doubt upon their testimony as to the dates of execution of the promissory notes and the cancellation thereof upon the execution of the con-

veyance of February 16, 1935. It seems reasonable for the court to have inferred that that conveyance was not only without consideration but for a purpose sinister and shameful, which the parties to the transaction sought to conceal by fabrication and falsehood. In this purpose the evident collaboration of both grantor and grantee is apparent. Their approximately parallel tales indicate a community of dishonest enterprise. It well may be inferred that while the deficiency judgment was not entered until some time subsequent to the questioned conveyance, nevertheless interest was found due and unpaid and pressure for payment was being applied by the bank. As the record is silent as to pressure from any other source, the conclusion is valid that the conveyance was made to hinder, delay and defraud the bank as holder of the note and mortgage subsequently sued upon.

■ [2.] The appellants contend that it was incumbent upon the judgment creditor to prove the value of the property upon which the mortgage was foreclosed, and rely on *Norton* v. *Blenkiron*, 138 Cal. App. 66 [31 Pac. (2d) 807]. In that case, however, the plaintiff attacked the conveyance as void under section 3442 of the Civil Code, which has to do with fraud presumed by law. The later case of *Fross* v. *Wotton*, *supra*, isolates the earlier case and interprets section 3439 of the Civil Code which has to do with actual fraud. It appears then that if actual fraud exists, the value of the property is immaterial as is also the question as to whether the challenged conveyance was prior or subsequent to the entry of the deficiency judgment, and whether or not the fraudulent grantor stripped himself of assets. The rule stated in the later case is in nowise modified by the case of *Costa* v. *Neves*, 12 Cal. (2d) 121 [82 Pac. (2d) 600], relied upon by the appellants in argument. In the instant case the property fraudulently conveyed was placed beyond the reach of the judgment creditor. Hence, section 3441 of the Civil Code has no application. Our reference to the code sections is to them as they existed prior to the amendments of 1939.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 11, 1941.