**H. A. THOMPSON & SONS, INC., a corporation, Plaintiff and Appellant,**

**v.**

**M. C. HAHN, a/k/a Martin Hahn, and Florence C. Hahn, individually and doing business under the name and style of Hahn Home Builders, Defendants and Respondents.**

No. 8210.

Supreme Court of North Dakota.

May 13, 1965.

Fleck, Smith, Mather, Strutz & Mayer, Bismarck, for appellant.

Zuger, Zuger & Bucklin, Bismarck, for respondents.

ERICKSTAD, Judge.

This is an appeal from a judgment dismissing the complaint of the plaintiff, H. A. Thompson & Sons, Inc., alleging that a transfer by Martin C. Hahn to his wife, Florence C. Hahn, of Martin's interest in certain real property was made with intent to hinder, delay, or defraud his creditors, and praying that said transfer be set aside, therefore, as void. The case was tried to the court without a jury. The plaintiff demands a trial de novo.

In 1958 Martin C. Hahn was the sole proprietor of a house building business. In the latter part of 1958 and the first part of 1959 twelve lots in Morningside Heights Addition to the City of Bismarck were conveyed by Consumer Sales Company to Martin C. Hahn and Florence C. Hahn, as joint tenants.

In 1960 Mr. Hahn was indebted to a number of creditors, including the plaintiff, in the total amount of approximately thirty-seven thousand dollars. Of this amount, eleven thousand dollars was due and owing the plaintiff for plumbing work done by the plaintiff in houses built by Mr. Hahn on other lots. Before the 20th of April, 1961, Mr. Hahn had at least one conference with his creditors, including the plaintiff, as a group, and also conferred with a number of his creditors individually, including the plaintiff. These conferences resulted from the pressure for payment being brought to bear upon Mr. Hahn by his creditors. The conferences failed to result in agreement for the payment of the debts.

On April 20, 1961, Martin C. Hahn conveyed his undivided one-half interest in and to the lots in Morningside Heights Addition to his wife Florence without receiving consideration therefor.

Slightly less than six months thereafter, on October 6, 1961, the plaintiff, along with two other creditors, filed a petition to have

Martin C. Hahn and Florence C. Hahn, individually and as partners, adjudicated bankrupt. In the bankruptcy proceeding the defendant, Martin C. Hahn, filed a list of assets and liabilities indicating total assets of $85,450, and total liabilities of $37,715. He therein declared that the twelve building lots located in Morningside Heights Addition were of the value of $24,750. On November 18, 1961, Charles C. Pollock, the Referee in Bankruptcy, dismissed the petition on various grounds, the ground pertinent to our decision being that the said Martin C. Hahn was not insolvent under the Bankruptcy Act.

On November 29, 1961, the plaintiff commenced an action against Martin C. Hahn in Burleigh County District Court on the indebtedness aforementioned. Pursuant to stipulation, a judgment for the plaintiff against the defendant Martin C. Hahn for approximately $11,000 was entered on April 10, 1962. On May 24, 1963, an execution on the aforesaid judgment was issued and thereafter was returned unsatisfied.

The plaintiff subsequently initiated its action to have the conveyance by Martin C. Hahn of his interest in the lots in Morningside Heights Addition set aside on the grounds that the conveyance was made while the said Hahn was insolvent and with intent to hinder, delay, or defraud his creditors. The defendant, Martin C. Hahn, denies that he was insolvent or that he was made insolvent by the conveyance to his wife of his interest in the lots and further argues that the dismissal by the Referee in Bankruptcy in Federal District Court was a determination that he was not insolvent and that, as this order has not been appealed from, it is res judicata as to all the issues in this action.

Without deciding whether the decision of the Referee in Bankruptcy in Federal District Court was res judicata, the trial court held that the plaintiff failed to prove by a preponderance of the evidence that the conveyance was with intent to defraud, hinder, or delay creditors, and, accordingly,

dismissed the complaint. It is from this judgment that the plaintiff, H. A. Thompson & Sons, Inc., appeals.

In reaching this conclusion the trial court seemed to stress the fact that the conveyance did not make the defendant insolvent.

The following is part of the testimony of Mr. Hahn in response to questions intended to discover the reason for the conveyance of the Morningside Heights Addition lots to his wife.

"Q. But actually, isn't it a fact that you put this conveyance on record in an attempt to put some of the property beyond the reach of the creditors, that's what you stated?

"A. It was to protect our interest, or the wife's interest.

"Q. I see. But wasn't it a fact that you wanted to put it beyond the reach of your creditors, this conveyance?

"A. After they would not settle with me.

\*   \*   \*   \*   \*   \*

"Q. Right. And you received no consideration whatsoever with respect to this conveyance and it was your intent only to put some of the interests beyond the reach of the creditors?

"A. No, I never had that in mind. I was to protect our interest where we could deal with our creditors, and that day has not come.

"Q. So that they couldn't levy on this, isn't that correct?

"A. I would say yes."

In connection with the transfer of these lots, Mrs. Hahn testified as follows:

"Q. What was the reason for the deed, ma'am?

"A. For the transfer of the lots?

"Q. Yes.

"A. Well, it was to protect the property from liens and attachments. That was mostly the reason.

"Q. I see. That was the reason?

"A. Yes, sir.

"Q. So that judgment creditors could not levy on that?

"A. That's right.

"Q. And that was your understanding of it?

"A. Yes.

"Q. And you know then that you paid nothing for this conveyance and it was merely to put it in your name to protect it from judgment liens?

"A. Yes.

"Q. And from creditors attaching the property?

"A. (Nods head.)"

An analysis of this testimony causes us to believe that the conveyance of these lots was made for the purpose of placing this property beyond the reach of creditors at a time when the creditors were pressing Mr. Hahn for payment of their accounts.

It appears, therefore, that unless the failure of the conveyance to make Mr. Hahn insolvent prevents it from being with intent to defraud, hinder, or delay creditors, this conveyance was with such intent and should be set aside.

In considering this question the Supreme Court of California, prior to California's adoption of the Uniform Fraudulent Conveyance Act, said:

"* * * We understand the true rule to be that amply secured debts are not to be taken into consideration for the purpose of determining whether the financial condition of the grantor renders the conveyance presumptively fraudulent as to existing creditors, but that when actual fraud is charged the sufficiency of the security at the time of the conveyance is important only as evidencing the existence or nonexistence of a fraudulent intent. This is in accordance with the long-established rule in this state that where there is actual fraud it is immaterial that the debtor does not entirely strip himself of his assets and there is other property from which the creditor may be satisfied. In First National Bank [of Los Angeles] v. Maxwell, 123 Cal. 360, 55 P. 980, 69 Am.St.Rep. 64, it was found that, in addition to the property covered by the deed of trust which it was sought to have set aside, the debtor owned real estate aggregating several thousand dollars over encumbrances and unencumbered personalty worth between five and six thousand dollars. The court said in 123 Cal. 360, at page 372, 55 P. 980, 983, 69 Am.St. Rep. 64: 'This is not a finding that the trust deed was not made to delay and defraud creditors, though competent as evidence tending in some measure towards that conclusion, though far from being in itself conclusive. In 2 Bigelow Frauds, p. 393, it is said, "Indeed, it matters not, where personal intent to defraud is shown, that the fraudulent conveyance, if allowed to stand, would not harm any one, by reason of the fact that the debtor has other property, ample in amount, within the reach of his creditors;" and in Hager v. Shindler, 29 Cal. [47] 60, it was said, "a rich man may make a fraudulent deed, as well as one who is insolvent." See, also, Bull v. Bray, 89 Cal. [286] 300, 26 P. 873 [13 L.R.A. 576].'

\* \* \* \* \* \*

"In Vogel v. Sheridan, [4 Cal.App. 2d 298] 40 P.2d 946, 949 (hearing denied by this court April 1, 1935), after holding that the evidence would support a finding that the conveyances were 'voluntary transfers made with the fixed intent and purpose of delaying and defrauding creditors and that

Mrs. Sheridan accepted these transfers with full knowledge of such intent and purpose,' the court said: 'Appellants contend that [the] findings are deprived of support because the corporation was solvent * * * when the transfers * * * were made to Mrs. Sheridan. In this connection, it may be stated that the corporate books were not all before the court and it is not possible to ascertain definitely whether the corporation was solvent or insolvent at the time said transfers were made. This action, however, may be sustained under section 3439 of the Civil Code regardless of the question of solvency as the evidence was sufficient to show an actual intent to delay and defraud creditors. Such intent invalidates the transaction as against creditors even though the debtor is not entirely stripped of assets and may still have sufficient property after such transfers to satisfy his creditors. Title Insurance, etc., Co. v. California Dev. Co., 171 Cal. 173 * * * 152 P. 542; First National Bank of L. A. v. Maxwell, 123 Cal. 360, 55 P. 980, 69 Am.St. Rep. 64; Alpha H. & S. Co. v. Ruby Mines Co., 97 Cal.App. 508, 275 P. 984; Benson v. Harriman, 55 Cal.App. 483, 204 P. 255; Johns v. Baender, 40 Cal. App. 790, 182 P. 55; Bekins v. Dieterle, 5 Cal.App. 690, 91 P. 173; 12 Cal. Jur. pp. 976, 977. It is only in actions maintained under the proviso in section 3442 that the insolvency of the transferror becomes of controlling importance, and in such actions, the question of actual intent becomes immaterial. The distinction is pointed out in Hanscome-James-Winship v. Ainger, 71 Cal.App. 735, 236 P. 325, and Allee v. Shay, 92 Cal.App. 749, 268 P. 962. It has been stated that both sections should be liberally construed to effect their purpose which "undoubtedly is to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach." Borgfeldt v. Curry, 25 Cal.App. 624, 626, 144 P. 976, 977.'

"In other words, the question of fraudulent intent is always one of fact, but where, at the time of the transfer, the grantor is insolvent, section 3442 of the Civil Code supplies the rule that the conveyance shall be deemed fraudulent, otherwise the fact is to be proven under section 3439 of the Civil Code." Fross v. Wotton, 3 Cal.2d 384, 44 P.2d 350, at 351–352.

Sections 3442 and 3439 of the Civil Code of California in effect at that time read as follows:

"§ 3442. Question of fraud, how determined. In all cases arising under section twelve hundred and twenty-seven, or under the provisions of this title, except as otherwise provided in section thirty-four hundred and forty, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration; provided, however, that any transfer or incumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors." 2 Kerr's Cyclopedic Codes of California, 2d ed. (1920).

"§ 3439. Transfers, etc., with intent to defraud creditors. Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." 2 Kerr's Cyclopedic Codes of California, 2d ed. (1920).

Section 13–01–10 of the North Dakota Century Code reads as follows:

"13–01–10. Fraudulent intent a question of fact.—In all cases arising under the provisions of this chapter, the question of fraudulent intent is one of fact and not of law. No transfer or charge shall be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

Section 13–01–05 of the North Dakota Century Code is quite similar to Section 3439 of the Civil Code of California in effect at the time of Fross.

"13–01–05. Transfers with intent to defraud or delay creditors are void.— Every transfer of property or charge made thereon, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, whether or not the same is valid as between the parties thereto, is void as against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

California repealed Sections 3439 and 3442, previously set forth herein, in 1939 when they adopted the Uniform Fraudulent Conveyance Act. The Uniform Act is now contained in Sections 3439.1 through 3439.12 of West's Annotated California Codes, Civil, vol. 12 (1954).

North Dakota adopted the Uniform Fraudulent Conveyance Act in 1943. It was embodied in the Revised Code of 1943 as a part of the code revision and now appears as Chapter 13–02 of the North Dakota Century Code.

In explaining the reason for recommending the adoption of the Uniform Fraudulent Conveyance Act and for retaining Chapter 13–01, the Code Revision Commission said:

"The Uniform Fraudulent Conveyance Act has been adopted in seventeen states and the code revision commission recommends its adoption by the legislative assembly of the state of North Dakota. The uniform act places some new provisions in our code, but a reading of the decisions of the North Dakota supreme court on the subject of fraudulent conveyances will clearly show that the rules contained in the Uniform Fraudulent Conveyance Act have been enunciated by the North Dakota supreme court. In this connection, see the cases of Ose vs. O'Connell, 63 N.D. 113, 246 N.W. 625, and Walker vs. Connell, 63 N.D. 622, 249 N.W. 726. S.L.1939, c. 110, the Recodification Act, requires the code revision commission to make the statutory law conform to the declaratory law, and the commission feels that because of this provision in the 1939 act, it should recommend the Uniform Fraudulent Conveyance Act for adoption to include in the code various rules which have been established by judicial decisions.

"This chapter does not conflict with the provisions contained in chapter 1 of this title but clarifies many of such provisions. Many of the other states in which the Uniform Fraudulent Conveyance Act has been adopted have provisions in their codes similar to or identical with the provisions contained in chapter 1 of this title." Code Revision Report covering work of The Code Revision Commission, State of North Dakota, Twenty-Eighth Session of the Legislative Assembly, Debtor and Creditor Relationship, Chapter 13–02.

Section 13–02–07 of the North Dakota Century Code is identical with Section 3439.07 of the California Civil Code:

"13–02–07. Conveyance made with intent to defraud.—Every conveyance made and every obligation incurred

with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." North Dakota Century Code.

"§ 3439.07 Conveyances made with intent to defraud

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. (Added Stats.1939, c. 329, p. 1669, § 9.)" 12 West's Annotated California Codes, Civil, vol. 12 (1954).

Decisions have been rendered in California since the adoption of the Uniform Fraudulent Conveyance Act to the same effect as the earlier decisions.

" 'It is well settled in this state that the relationship of debtor and creditor arises in tort cases the moment the cause of action accrues.' Hansen v. Cramer, 39 Cal.2d 321, 323, 245 P.2d 1059, 1060, 30 A.L.R.2d 1204; McKinney v. Wright, 105 Cal.App. 401, 407, 287 P. 506. Furthermore the transfer could be set aside if there was an actual intent to defraud although Bennie was not rendered insolvent. Fross v. Wotton, 3 Cal.2d 384, 389, 44 P.2d 350; Civ.Code § 3439.07." Freeman v. LaMorte, 148 Cal.App.2d 670, 307 P.2d 734, at 738.

In 1940 a Federal Circuit Court of Appeals said:

"The finding that the deed was made with intent, on the part of both Marwick and appellant, to defraud Marwick's creditors is not challenged. Hence, we need not consider the finding that it was made without a valuable consideration or the finding that it was made while Marwick was insolvent. For if, as appears to be conceded, the deed was made with intent, on the part of both Marwick and appellant, to defraud Marwick's creditors, it was void against them and against appellee, regardless of whether there was or was not a valuable consideration, and regardless of Marwick's solvency or insolvency." First Presbyterian Church of Santa Barbara, Cal. v. Rabbitt, 118 F.2d 732, at 735 (9th Cir. 1940).

A California District Court of Appeal in 1951 said:

"From the finding that the property was transferred and the money was paid with actual intent to defraud existing and future creditors, the trial court correctly concluded and decreed that the transfer and payment were void as against plaintiff as a creditor of the transferor and should be set aside for the benefit of plaintiff, and rendered judgment to that effect. In view of former section 3439 of the Civil Code and sections 154 and 531 of the Penal Code, a transfer made with actual intent to defraud creditors is void, for illegality, as to any creditor and may be attacked by any creditor, whether an existing or a future creditor. Severance v. Knight-Counihan Co., 29 Cal.2d 561, 177 P.2d 4, 172 A.L.R. 1107; Sasaki v. Yana Kai, 56 Cal.App.2d 406, 133 P.2d 18. It does not matter if the transferor retains property ample to pay his creditors. Adams v. Bell, 5 Cal.2d 697, 700–701, 56 P.2d 208; Security-First Nat. Bank v. Bruder, 44 Cal.App.2d 767, 773, 113 P.2d 3. * * *" Heffernan v. Bennett & Armour, Cal.App., 239 P.2d 129 at 140–141.

In a decision rendered in 1953, a California District Court of Appeal said:

"Fross v. Wotton [3 Cal.2d 384, 44 P.2d 350], holds that in cases such as this the 'proof indicative of fraud must come by inference from the circum-

stances surrounding the transaction, *the relationship and interests of the parties.'* (Emphasis added [by California court].) At the time of the proceeding under § 685 appellant's husband was many miles away in Arabia; the moving papers were served on appellant, who admitted that she held her husband's general power of attorney, and it would appear that in that proceeding she took his place in resisting the issuance of an execution. What she did after the adverse decision already appears. These facts presented to the trial court a combination of *relationship* (husband and wife plus principal and agent) *and interest,* rarely found in a single record. 'Relationship between the parties is * * * of great importance, and when coupled with other circumstances tending to show fraudulent design, may justify an inference of fraud.' 12 Cal.Jur., p. 1070.

"We see no reason to discuss other points presented in the briefs respecting insolvency, or respecting other assets which the Corbetts possessed, since it is settled that if the intent of the debtor to hinder or delay creditors is shown, it is not necessary to prove that the debtor was insolvent at the time. Fross v. Wotton [3 Cal.2d 384, 44 P.2d 350]. Maguire v. Corbett, 119 Cal.App.2d 244, 259 P.2d 507, at 511.

In 1963 a California District Court of Appeal said:

"In order to establish a conveyance as fraudulent under section 3439.04 of the Civil Code, it must appear that the transferor is insolvent at the time of the conveyance or will be rendered insolvent thereby *and* that the conveyance was made without a fair consideration. (Aggregates Associated, Inc. v. Packwood (1962), 58 A.C. 593, 601 [58 Cal.2d 580], 25 Cal.Rptr. 545, 375 P.2d 425; Tokar v. Redman (1956), 138 Cal.App.2d 350, 353–354, 291 P.2d

987.) Proof of insolvency and of want of fair consideration is therefore conclusive of fraudulent intent and *actual* intent to defraud on the part of the transferor is immaterial and need not be established. (See Wight v. Rohlffs (1941), 48 Cal.App.2d 696, 697, 121 P.2d 76; Enos v. Picacho Gold Min. Co. (1943), 56 Cal.App.2d 765, 776, 133 P.2d 663.) * * *

* * * * * *

"On the other hand to establish a conveyance as fraudulent under section 3439.07 *actual* intent, as distinguished from intent *presumed* in law, to defraud creditors must be proved. 'While it is true that proof of fraud may, and must often be, made by circumstantial evidence [citation], it remains true that actual fraud must be proved by clear and convincing evidence [citation], and that "where the circumstances of the transfer comport equally with the theory of honesty and fair dealing, fraud will not be found." (Hedden v. Waldeck, 9 Cal.2d 631, 636, 72 P.2d 114.)' (Aggregates Associated, Inc. v. Packwood, supra, 58 A.C. 593, 600 [58 Cal.2d 580], 25 Cal.Rptr. 545, 548, 375 P.2d 425, 428.) In such cases, however, the solvency of the transferor is immaterial (Fross v. Wotton (1935), 3 Cal.2d 384, 389, 44 P.2d 350, 352 quoting from Hager v. Shindler (1865), 29 Cal. 47, 59 to the effect that 'A rich man may make a fraudulent deed, as well as one who is insolvent.') By its express terms the above statute provides protection for 'both present and future creditors.'

* * * * * *

"Whether a conveyance is made with actual intent to defraud creditors is not a question of law but one of fact to be determined by the trial court. (Knapp v. Elliott (1947), 81 Cal.App.2d 667, 673, 184 P.2d 934; Arnold v. Hadgis (1951), 102 Cal.App.2d 88, 93, 226 P.2d 641; Jackson v. Burke (1954), 124 Cal.

App.2d 519, 526, 269 P.2d 137; Slater v. Bielsky (1960), 183 Cal.App.2d 523, 527, 6 Cal.Rptr. 683.) As this court stated in Heffernan v. Bennett & Armour (1952), 110 Cal.App.2d 564, 578–579, 243 P.2d 846, 855, an actual intent to defraud 'never arises as a matter of law from the existence of any given set of facts. It must be proved just as any other material fact in issue. Its proof is peculiarly dependent upon the circumstances which surround the questioned transaction, and the inferences which the trier of the facts may reasonably draw therefrom.'" T W M Homes, Inc. v. Atherwood Realty & Investment Co., 214 Cal.App.2d 826, 29 Cal.Rptr. 887, at 896–897.

▮ Adopting the view of California, we hold that to find a conveyance fraudulent under § 13–02–07 of our Code, it is not necessary that the conveyance make the debtor insolvent. Where actual intent to defraud, hinder, or delay creditors is proved by clear and convincing evidence, the conveyance should be set aside, even though it did not render the debtor insolvent. The admissions by the debtor and his wife herein are to the effect that the purpose of the conveyance was to place the conveyed property beyond the reach of the debtor's creditors. Such an admission under the circumstances of this case, where the debtor was being pressed for the payment of his accounts and foreclosure proceedings were under way in connection with the bulk of his other property not exempt from execution and where the conveyance was to the debtor's wife without consideration, constitute an admission of a conveyance with intent to defraud, hinder, or delay creditors.

The defendant's contention that the judgment of the Referee in Bankruptcy in Federal court is res judicata of all issues is without merit.

The Federal law applied in connection with the petition filed by the plaintiff herein and others reads as follows:

"§ 21. Acts of bankruptcy

"(a) Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 107 or 110 of this title; or (2) made or suffered a preferential transfer, as defined in subdivision a of section 96 of this title; or (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; or (4) made a general assignment for the benefit of his creditors; or (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property; or (6) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt.

\*    \*    \*    \*    \*    \*

"(c) It shall be a complete defense to any proceedings under the first act of bankruptcy to allege and prove that the party proceeded against was not insolvent as defined in this title at the time of the filing of the petition against him. If solvency at such date is proved by the alleged bankrupt, the proceedings shall be dismissed. In such proceedings the burden of proving solvency shall be on the alleged bankrupt." 11 U.S.C. § 21, subs. a, c (1958).

"§ 96. Preferred creditors

"(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." 11 U.S.C. § 96, sub. a (1) (1958).

"§ 1. Meaning of words and phrases

\*       \*       \*       \*       \*       \*

"(19) A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts; \*  \*  \*." 11 U.S.C. § 1 (1958).

It appears clear from the foregoing sections of Federal law that our Uniform Fraudulent Conveyance Act applies a different rule in determining whether a conveyance is with intent to defraud, hinder, or delay creditors from the rule applied under Federal law to determine whether a person has committed the first act of bankruptcy.

The dismissal by the Referee of the petition in bankruptcy was on the ground that the debtor was solvent. As proof of solvency under Subsection c of Section 21 was a complete defense to any proceeding under the first act of bankruptcy, the dismissal of the petition was not res judicata on the issue of whether or not the conveyance under Section 13–02–07 of our code was with actual intent to defraud, hinder, or delay creditors. The dismissal was without a determination of actual intent.

For the reasons expressed herein the judgment of the trial court is reversed and the case is remanded, with instructions to the court to set aside the conveyance of the debtor, Martin C. Hahn, to his wife of the twelve lots in Morningside Heights Addition to the City of Bismarck.

BURKE, C. J., and STRUTZ, TEIGEN and KNUDSON, JJ., concur.